**Kevin Ross LACEY, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 89-238.**

Supreme Court of Wyoming.

Dec. 31, 1990.

Rehearing Denied Feb. 1, 1991.

Linda S. Lewis and Daniel G. Blythe of Blythe & Lewis, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., and Mary B. Guthrie, Sr. Asst. Atty. Gen., for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

MACY, Justice.

Appellant Kevin Ross Lacey appeals from his convictions for one count of kidnapping and two counts of aggravated assault and battery and from the district court's denial of his motion for a new trial.

We affirm.

Appellant raises the following issues:

I. Does the due process clause of the fourteenth amendment to the Constitution of the United States as interpreted by the United States Supreme Court in *Brady v. Maryland,* 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)] and Article 1 Section 6 of the Wyoming Constitution require a new trial for Appellant?

II. Does the confrontation clause of the sixth amendment to the United States Constitution and Article 1 Section 10 of the Wyoming Constitution require a new trial for Appellant?

III. Should the Court grant Appellant a new trial based on newly discovered evidence?

IV. Was counsel for the Appellant ineffective so that Appellant should be granted a new trial?

V. Should the Court remand this matter for resentencing for the reason that Appellant's status is that of an habitual criminal and not a status of habitual criminal on two separate charges?

At the trial, Appellant's wife, Diane, testified to the occurrence of the following events. On September 10, 1988, Appellant finished working and returned to the apartment where he and Diane lived. Diane was approximately six months pregnant. Appellant had consumed some alcohol, and he continued to drink throughout the evening. Between nine and ten o'clock, the couple prepared to go to bed, and Diane asked Appellant if she could read a book. Appellant got angry because he did not approve of the book's subject matter and tore the book into pieces. Diane became frightened and went into the bathroom to change clothes so she could leave. Appellant went into a fury, kicked the bathroom door open, and began to strike Diane. Appellant pushed Diane into the bathtub, continued to beat her, pulled her hair, and told her that she and the baby she was carrying had to die. Although Diane did not believe she would survive her husband's attack, the physical violence ceased after a period of thirty to forty-five minutes. At that point, Appellant became apologetic, and the couple cleaned up Diane's hair and blood. Despite the fact that Appellant's rage had subsided, he told Diane that she would have to die before the night was over. Diane asked if she could leave the apartment, but Appellant said, "No." After the bathroom was cleaned, Appellant retrieved several cans of beer and a knife, and the couple went to bed. Appellant lay beside Diane, holding the knife, and told her to go to sleep.

The next day, Appellant continued to exercise dominion over Diane by accompanying her everywhere she went and by carrying the knife or keeping it in close proximity. Appellant also poked at Diane with the knife, held it to her throat, and continued to verbally threaten her. The couple had several visitors during the day, but Diane was too afraid of Appellant to say or do anything which would alert anyone of her peril. Diane and Appellant left the apartment so Appellant could speak with a co-worker, but, once again, Diane was too scared to seek help. Finally, Diane's sister stopped by the apartment, and Diane told her that she wanted to get out. Diane's sister notified her father of Diane's plight, and he went to the apartment and liberated Diane without incident.

A criminal complaint was filed against Appellant, charging him with one count of kidnapping in violation of Wyo.Stat. § 6–2–201(a)(ii) and (iii) (1977) and of Wyo. Stat. § 6–2–201(d) (1977)[1] and with two

---

**1.** Section 6–2–201 provides in pertinent part:
    (a) A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business or from the vicinity where he was at the time of the removal, or if

he unlawfully confines another person, with the intent to:
       \*      \*      \*      \*      \*      \*
    (ii) Facilitate the commission of a felony; or

counts of aggravated assault and battery in violation of Wyo.Stat. § 6-2-502(a)(iii) and (iv) (1977) and of Wyo.Stat. § 6-2-502(b) (1977).[2] The information also alleged that Appellant was a habitual criminal under Wyo.Stat. § 6-10-201(a)(ii) (1977). Appellant initially pleaded not guilty to all three counts and then changed his plea to not guilty by reason of mental illness. After two medical examinations, which were conducted for the purpose of determining if Appellant was mentally competent to stand trial, the district court issued an order continuing Appellant's trial.

Diane testified that before the trial she and Appellant discussed the idea of Diane either changing her version of the story or refusing to testify against Appellant. She stated that she also went to the prosecuting attorney's office and that she told him a story which was different from her original statement. Before Appellant's trial, Diane left the state, and, consequently, police arrested her in Oklahoma for failing to appear.

On April 18, 1989, a jury convicted Appellant on all three counts, and the court referred the matter for a presentence investigation. On August 4, 1989, Appellant filed a motion for a new trial. He based the motion upon Diane's claim that her testimony at the trial was false. Attached to the motion was a statement by Diane in which she said that she was the aggressor in the altercation with Appellant, that Appellant only restrained her during her rage, that Appellant did not keep her in the apartment against her will, and that Appellant did not threaten her with a knife. Diane also stated that she attempted to tell the truth to the prosecuting attorney but that he coerced her into testifying against Appellant in accordance with her original story.

The district court held a motion hearing and concluded that Appellant was not entitled to a new trial. The court stated:

[I]t is my judgment that in any event, that the recanted testimony by Mrs. Lacey is totally without credibility and probably because of coercion or emotional turmoil brought about by the husband-wife relationship.

The district court sentenced Appellant to the Wyoming State Penitentiary for a minimum of twenty years and a maximum of twenty-five years on count I, for a minimum of ten years and a maximum of fifteen years on count II, and for a minimum of ten years and a maximum of twelve years on count III. The sentencing order stated that the sentences for counts I and II were to run concurrently to each other and that the sentence for count III was to run consecutively to the sentences for counts I and II. This appeal followed.

I

■ Appellant's first issue encompasses two questions. First, did the district court err when it allowed several of the State's witnesses to testify about Diane's out-of-court statements? Second, is Appellant entitled to a new trial because the State sup-

(iii) Inflict bodily injury on or to terrorize the victim or another.

\* \* \* \* \* \*

(d) If the defendant does not voluntarily release the victim substantially unharmed and in a safe place prior to trial, kidnapping is a felony punishable by imprisonment for not less than twenty (20) years or for life except as provided in W.S. 6-2-101.

2. Section 6-2-502 provides in pertinent part:
(a) A person is guilty of aggravated assault and battery if he:

\* \* \* \* \* \*

(iii) Threatens to use a drawn deadly weapon on another unless reasonably necessary in defense of his person, property or abode or to prevent serious bodily injury to another; or

(iv) Intentionally, knowingly or recklessly causes bodily injury to a woman whom he knows is pregnant.

(b) Aggravated assault and battery is a felony punishable by imprisonment for not more than ten (10) years.

pressed and utilized perjured testimony in violation of the due process clause of the United States Constitution and Article 1, Section 6 of the Wyoming Constitution?

Appellant argues that the district court violated W.R.E. 608(a) by allowing witnesses for the State to support Diane's credibility before it was attacked. Diane was the first witness called by the State. The State subsequently called five witnesses who testified, *inter alia*, about statements which Diane had made to them shortly after the alleged assaults, batteries, and kidnapping. Appellant's counsel objected to some of the testimony as being inadmissible hearsay. The State responded by asserting that the statements were prior consistent statements which were being offered to rebut an expressed or implied charge of recent fabrication or improper influence. The district court overruled Appellant's objections.

W.R.E. 801(d)(1)(B) provides:

A statement is not hearsay if:

(1) Prior Statement by Witness.—The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive[.]

In *Makinen v. State*, 737 P.2d 345 (Wyo. 1987), we stated that W.R.E. 801(d)(1)(B) has two express conditions. First, the prior statement must be consistent with the declarant's testimony. Second, there must be an express or implied charge of recent fabrication or of improper influence or motive.

The testimony given by the State's witnesses satisfies both conditions. As conceded by Appellant in his appellate brief, the testimony given by the five witnesses was consistent with Diane's testimony. The record also reveals sufficient evidence of an implied charge of improper influence. On direct examination, Diane stated that she went to the prosecuting attorney's office and tried to change the story contained in her original statements. She also stated that she and Appellant discussed the idea of her altering her story. On cross-examination, Appellant's counsel asked Diane if the prosecution made a deal with her in exchange for her testimony. He also repeatedly asked her if she and the prosecuting attorney had gone over her testimony before the trial. Under those circumstances, we hold that the district court did not err by allowing the State's witnesses to testify about Diane's prior consistent statements pursuant to W.R.E. 801(d)(1)(B).

■ Appellant also argues that he is entitled to a new trial because the State utilized Diane's perjured testimony and because it did not disclose the fact that it cut a deal with Diane in return for her testimony. During the hearing on Appellant's motion for a new trial, Diane claimed that her testimony at the trial was perjured. She also stated that the prosecuting attorney threatened to extradite her from Oklahoma and to allow authorities to keep her children unless she voluntarily returned to Wyoming to testify against Appellant in accordance with her original statements.

■ We view both aspects of Appellant's second argument as an assertion that the State knowingly used perjured or coerced testimony to obtain his convictions.[3] This Court has articulated the applicable standard to be applied when the State knowing-

---

**3.** The offense of perjury is defined in Wyo.Stat. § 6–5–301(a) (1977):

A person commits perjury if, while under a lawfully administered oath or affirmation, he knowingly testifies *falsely* or makes a *false* affidavit, certificate, declaration, deposition or statement, in a judicial, legislative or administrative proceeding in which an oath or affirmation may be required by law, touching a matter material to a point in question.

(Emphasis added.)

Recanted testimony is defined as " 'testimony which has been repudiated by a party who gave it.' " *Best v. State*, 769 P.2d 385, 389 (Wyo.1989) (quoting *State v. Nickerson*, 320 N.C. 603, 359 S.E.2d 760, 763 (1987)). In *Best*, 769 P.2d at 388–89, we also stated, "The typical recantation case involves a motion for new trial based on the affidavit of a witness who swears that his trial testimony was false."

ly uses perjured testimony to obtain a conviction. *Jones v. State*, 568 P.2d 837 (Wyo. 1977) (citing *Mooney v. Holohan*, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406 (1935), as the seminal United States Supreme Court case on the issue of a prosecutor knowingly using perjured testimony). In *Jones*, 568 P.2d at 847, we stated:

> [K]nown use of perjured testimony (even if unsolicited) is fundamentally unfair, and the conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.

Appellant's argument presupposes that Diane committed perjury at Appellant's trial. Given the evidence presented to the district court, including Diane's prior consistent statements, and the court's belief that Diane's recantation was the result of "coercion or emotional turmoil brought about by the husband-wife relationship," the district court concluded that Diane's recanting testimony lacked sufficient credibility to warrant a new trial. That conclusion clearly implies that the evidence was insufficient for the court to conclude that the testimony given at the trial was false. Absent a showing of an abuse of discretion, we will not disturb the district court's decision. *Daellenbach v. State*, 562 P.2d 679 (Wyo.1977). *See also Best v. State*, 769 P.2d 385 (Wyo.1989), and *Burns v. State*, 574 P.2d 422 (Wyo.1978) (stating that recanting testimony is suspicious in nature). We hold that Appellant is not entitled to a new trial on the basis that the State utilized perjured testimony.

## II

■ Appellant contends that the State's failure to disclose Diane's perjury limited his ability to impeach Diane and was a violation of his right to confront adverse witnesses. This argument fails because it wrongfully assumes that Diane committed perjury. It is an inescapable conclusion that there must be perjury before the State can be responsible for failing to disclose it.[4]

In addition, the record reveals that Appellant's counsel knew Diane attempted to recant her original statements; therefore, Appellant's ability to impeach Diane was not limited. At Appellant's trial, Diane admitted that she went to the prosecutor's office and that she attempted to give him a statement of facts which was different from her previous statements. During the prosecuting attorney's direct examination of Diane, the following colloquy occurred:

Q. Did [Appellant] ever tell you how he wished you to testify in this case?

A. Yes, we both talked about a lot of ways to do it.

Q. What did he want you to do?

A. Just plead the Fifth.

Q. Did he ever suggest to you anything else?

A. Well, we both talked together about doing other things and then I wanted to leave town and he didn't want me to go.

Q. What other things did you discuss doing?

A. Changing the story.

Q. Did [Appellant] tell you how you could change your story?

A. Yes, and I helped.

Q. What did he say to you in that regard?

---

**4.** While Appellant bases this argument upon the right to confront adverse witnesses, his previous argument was premised upon the concept of due process. In *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the United States Supreme Court reviewed a decision by the Ninth Circuit Court of Appeals which treated the prosecution's concealment of impeachment evidence as constitutionally different than the prosecution's concealment of exculpatory evidence. The court of appeals stated that the failure to disclose impeachment evidence was "more egregious because it threatens the defendant's right to confront adverse witnesses, and therefore, his right to a fair trial." *Bagley v. Lumpkin*, 719 F.2d 1462, 1464 (9th Cir.1983). On the basis of *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), the Supreme Court reversed the decision and stated that no distinction existed between the concealment of impeachment evidence and the concealment of exculpatory evidence. *Bagley*, 473 U.S. 667, 105 S.Ct. 3375.

A.  Just that I assaulted him first.

Q.  Is that what happened that night, Diane?

A.  It isn't the way I remember it.

Q.  Why were you going to change your story then?

A.  Because I love [Appellant] and I don't want him to go to prison.  That is why.

Q.  Do you still love him?

A.  Yes[,] I do.

Q.  In fact, did you at one point come to my office to change your story?

A.  Yes[,] I did.

Q.  When was that, approximately?

A.  March.

Q.  Early or late March?

A.  Early March I think.

Q.  What was the outcome of that?

A.  Not good.

Q.  Not good?  What do you mean?

A.  I couldn't get us out of going to this trial.

In light of that testimony and in the absence of a finding that Diane committed perjury, we hold that Appellant is not entitled to a new trial on the basis that the State violated his right to confront adverse witnesses.

### III

■  Appellant asserts that he is entitled to a new trial on the basis of newly discovered evidence.  The alleged newly discovered evidence is the same recanting testimony which served as the foundation for Appellant's two previous issues.

The decision of whether to grant or deny a new trial on the basis of newly discovered evidence is one within the sound discretion of the district court, and we will not reverse absent a showing of an abuse of that discretion.  This Court has defined judicial discretion as "a composite of many things, among which are conclusions drawn from objective crite-

ria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously."  *Martin v. State,* 720 P.2d 894, 897 (Wyo.1986) * * *.

*King v. State,* 780 P.2d 943, 947 (Wyo.1989) (citations omitted).  We have enunciated the criteria for granting a new trial on the basis of newly discovered evidence:

[I]t is incumbent on a party who asks for a new trial on the grounds of newly discovered evidence to satisfy the court: (1) That the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that it did not come sooner; (3) that it is so material that it would probably produce a different verdict, if the new trial were granted; and (4) that it is not cumulative, viz., speaking to facts in relation to which there was evidence at the trial.

*Opie v. State,* 422 P.2d 84, 85 (Wyo.1967). Each criterion must be satisfied in order for this Court to find that the district court abused its discretion in denying the motion for a new trial on the basis of newly discovered evidence.  *Gist v. State,* 737 P.2d 336 (Wyo.1987), *appeal after remand* 766 P.2d 1149 (Wyo.1988); *Grable v. State,* 664 P.2d 531 (Wyo.1983).

Appellant has failed to show that he did not acquire knowledge of the evidence until after the trial was held.  In fact, Diane indicated at the trial that she recanted her original story before Appellant's trial and that Appellant helped her with the recantation.  Given that testimony, the suspicious nature of the recanting testimony, and the district court's conclusion that Diane's testimony at the motion hearing lacked credibility, we hold that the district court did not abuse its discretion by denying Appellant's motion for a new trial.  *Gist,* 737 P.2d 336; *Salaz v. State,* 561 P.2d 238 (Wyo.1977). *See also Burns,* 574 P.2d 422.

### IV

■  Appellant argues that he is entitled to a new trial because he was denied effec-

tive assistance of counsel. Appellant's argument is premised, in part, on the fact that he was represented by two different attorneys between the time he was arraigned and the time he was convicted. Diane claimed that she recanted her story to Appellant's first attorney but not to his second attorney. Appellant contends that his first attorney was ineffective because he failed to tell Appellant's second attorney about Diane's recantation. In the alternative, Appellant contends that, if his second attorney did know about Diane's recanting story, he did not adequately follow up on that information.

In *Frias v. State*, 722 P.2d 135, 145 (Wyo.1986), we stated:

> The standard by which we determine whether assistance of counsel is effective is one of reasonableness. That is, we must determine whether, in light of all the circumstances, trial counsel's acts or omissions were outside the wide range of professionally competent assistance. Under this standard, appellant must demonstrate
>
> " * * * first * * * that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [appellant] by the Sixth Amendment. Second, [appellant] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive [appellant] of a fair trial, a trial whose result is reliable." [*Strickland v. Washington*, 466 U.S. 668,] 104 S.Ct. [2052,] 2064[, 80 L.Ed.2d 674 (1984)].

(Citations omitted.) The duty to investigate is subject to the following parameters:

> [S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

*Strickland v. Washington*, 466 U.S. 668, 690–91, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984).

Given the lack of credibility attributed by the district court to Diane's recanting testimony and the evidence supporting her original story, we simply cannot hold that either of Appellant's attorneys acted unreasonably or that Appellant has shown he was prejudiced by his attorneys' performance or lack of performance. Appellant is not entitled to a new trial on the basis of ineffective assistance of counsel.

## V

■ Appellant's final argument challenges the propriety of the district court's decision to increase both aggravated assault and battery sentences to greater amounts of time than provided for by statute as a result of the jury finding him to be a habitual criminal. Appellant does not contest the jury's finding that he is a habitual criminal. Instead, he contends his status as a habitual criminal should be used to enhance only one of his sentences. We disagree.

Wyo.Stat. § 6–10–201 (1977) provides:

(a) A person is an habitual criminal if:

(i) He is convicted of a violent felony; and

(ii) He has been convicted of a felony on two (2) or more previous charges separately brought and tried which arose out of separate occurrences in this state or elsewhere.

(b) An habitual criminal shall be punished by imprisonment for:

(i) Not less than ten (10) years nor more than fifty (50) years, if he has two (2) previous convictions;

(ii) Life, if he has three (3) or more previous convictions.[5]

In *Green v. State*, 784 P.2d 1360 (Wyo. 1989), we clarified the meaning of the phrase "previous charges separately brought and tried which arose out of separate occurrences." We held that three convictions arising out of one occurrence could only count as one previous conviction under § 6–10–201 because they "were not 'separately brought and tried' nor did they arise out of 'separate occurrences.'" *Green*, 784 P.2d at 1365. We did not address the issue of whether two previous convictions, as defined by *Green* and § 6–10–201, could be used to enhance two sentences for two convictions arising out of the same occurrence.

The purpose of the habitual criminal statute is to provide additional punishment for people who have not been deterred by previous penalties. *Williams v. State*, 430 N.E.2d 759 (Ind.), *appeal dismissed* 459 U.S. 808, 103 S.Ct. 33, 74 L.Ed.2d 47 (1982). That purpose applies regardless of whether the habitual criminal commits more than one felony during a single occurrence or more than one felony in separate occurrences. We hold that the district court did not abuse its discretion when it enhanced two sentences for two convictions arising out of a single occurrence. *See Seeley v. State*, 715 P.2d 232 (Wyo.1986) (sentencing is within district court's discretion).

Affirmed.

---

**5.** As we stated in *Evans v. State*, 655 P.2d 1214, 1225 (Wyo.1982), "Habitual criminality is a status, not an offense, and its finding calls for an enhancement of the punishment for the crime charged."