**Richard WARREN, Appellant (Defendant),**

v.

**STATE of Wyoming, Appellee (Plaintiff).**

**No. 90–141.**

Supreme Court of Wyoming.

April 18, 1991.

James H. Barrett, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Hackl, Deputy Atty. Gen., Karen A. Byrne, Sr. Asst. Atty. Gen., Prosecution Assistance Program. Theodore E. Lauer, Director, and Cynthia L. Harnett, Student Intern, Cheyenne, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

GOLDEN, Justice.

Richard Warren appeals from his conviction and sentence, following a jury trial, for the offense of attempted voluntary manslaughter. He was charged with and tried for attempted second degree murder, and the jury found him guilty of the lesser included · offense of attempted voluntary manslaughter. The conviction results from

an incident outside Warren's home during which he fired a rifle three times at an acquaintance, wounding him once in the leg. Warren argues that,

I. The evidence is insufficient to sustain a conviction of attempted manslaughter.
II. The court erred in denying defendant's motion for a new trial.

We affirm.

## FACTS

On July 14, 1989, Richard Warren was napping in his trailer home at 1418 Plum, near Cheyenne. About 7:00 p.m. John Johnson arrived at Warren's home and knocked on the door. Johnson was buying a truck from Warren and Warren's wife and still owed them $150. When Warren answered the door, Johnson told him that he would be late with the $50 payment then due on the truck because he had quit his job. The two men then became engaged in conversation on the partially enclosed porch and steps outside the door to the trailer. Their discussion became "heated," as Warren expressed doubt that Johnson would pay him, and Johnson replied by asking Warren "what his problem was."

As tempers flared Johnson also warned Warren to leave Johnson's brother-in-law Twigg alone, a reference to an earlier altercation between Twigg and Warren, and Warren yelled at Johnson to "get out." Johnson left the porch, climbed into the truck, and began to back it down Warren's driveway. Warren went into his home and emerged with a semi-automatic .22 cal. rifle. He fired one shot that struck the ground in front of the truck. He also shouted at Johnson. Johnson was trying to leave because he was afraid that Warren might shoot him, but the truck stalled and rolled to a halt in the road at the foot of the driveway and perpendicular to it.

Johnson and the two witnesses to the shooting—Bowen and Twigg—who were working in a garage on Warren's property, testified that Warren ordered Johnson out of the truck and Johnson complied. Warren then drew the rifle to his shoulder, took aim and fired, the bullet striking Johnson in the left leg above the knee. Johnson

dove back into the cab of the truck, ducked down to avoid being shot again, and tried to get the truck started.

Warren then aimed and rapidly fired a third shot. Eyewitness Twigg testified that he saw "[Warren] take another bead again for [Johnson's] head" before pulling the trigger. This was just after Johnson ducked down. Twigg said that Johnson "laid down when the shot went off, I thought he was dead." This bullet went through the cab of the truck above the prostrate Johnson, entering the open driver side window and exiting through the open passenger side window. It then passed through the passenger side mirror of the pickup and through a mailbox on the far side of the road.

After firing the three shots Warren turned away and walked back into his house. There, he called his wife at work, and she told him to call the police. She then called the police to report the shooting. Johnson remained in Warren's driveway, where he received assistance and first aid from the two witnesses and one of Warren's neighbors. He was later placed in an ambulance and transported to a hospital. Subsequently, after a period of negotiation, Warren surrendered to law enforcement authorities.

## SUFFICIENCY OF THE EVIDENCE

Our standard of review for a sufficiency of the evidence claim provides that we consider the evidence in the light most favorable to the state and draw all reasonable inferences therefrom. *Longfellow v. State*, 803 P.2d 848, 854 (Wyo.1990). We are concerned only that the evidence, viewed in this light, supports a reasonable inference of guilt beyond a reasonable doubt and not with whether that evidence convinces this court beyond a reasonable doubt of the appellant's guilt. *Griffin v. State*, 749 P.2d 246, 248 (Wyo.1988).

The offense of attempted voluntary manslaughter was defined in jury instruction 12, which set out the following elements:

1. The crime occurred within the county of Laramie, on or about the date of July 14, 1989; and

2. The defendant attempted to kill a human being; and

3. The defendant acted without malice, express or implied; and

4. The defendant acted voluntarily, upon a sudden heat of passion.

5. The defendant did not act in self-defense.

■ The date and location of the shooting are not in dispute. Warren argues only that there is no evidence of an intent, or attempt, to kill. He does not contest the finding that he acted without malice, on a sudden heat of passion, and without the defense of self-defense. Therefore, we need only review the evidence supporting the second element, although we will briefly address the remaining elements to "cover the bases."

Regarding whether Warren attempted to kill a human being, the evidence is that he fired three shots as Johnson retreated, at least two of which were aimed at Johnson, with the third aimed directly at Johnson's head. The second of those shots struck Johnson in the upper leg, seriously wounding him.

Both of the state's eyewitnesses testified the second and third shots were aimed at Johnson. Bowen testified that Warren had the rifle up to his shoulder, aiming it at Johnson and then firing as Johnson sat in the truck after being struck by the second shot. Twigg stated that he saw Warren "take another bead" for Johnson's head before pulling the trigger for the third time. That bullet passed through the passenger compartment of the truck an instant after Johnson threw himself down on the seat in an effort to avoid being shot again.

In *Smith v. State*, 564 P.2d 1194, 1198 (Wyo.1977), this court noted that "[i]ntent to kill may be presumed from the evidence that a person has assailed another violently with a dangerous weapon likely to kill, which presumption may be rebutted." Firing a gun at another is such an assault and supports the inference of an intent to kill.

*Owens v. State*, 544 N.E.2d 1375, 1377 (Ind. 1989). Clearly the prospect is great that a bullet fired from a gun aimed at a human being and which strikes that person may be fatal. This is particularly true when, as was testified to at Warren's trial, the rifle is aimed directly at the "target's" head. The reasonable inference from the assault with the rifle and all the other evidence is that Warren attempted to kill Johnson, and a jury could so find beyond a reasonable doubt.

■ The third element of the criminal offense that Warren was convicted of is the absence of malice. Clearly Warren does not argue that malice is present, as malice is an element of murder in the second degree, the more serious crime he was charged with. Likewise the fourth element, that he acted voluntarily, upon a sudden heat of passion, is not disputed. To the extent that Warren may be contending he did not act voluntarily, the evidence is that he fired three times, pausing between shots and aiming at least twice, at a man who was some distance from him and trying to leave. The final shot was fired after he had succeeded in wounding Johnson. The evidence more than supports an inference beyond a reasonable doubt that Warren's actions were voluntary.

■ The final element is that Warren was not acting in self-defense. The evidence is that, following a disagreement, Warren fired a rifle multiple times from a distance of about 30–50 feet at an unarmed man who was trying to retreat. Nothing here supports a claim of self-defense, and the jury reasonably inferred that Warren was not defending himself when he shot Johnson.

## MOTION FOR A NEW TRIAL

Warren submitted a motion for a new trial under the provisions of W.R.Cr.P. 34, asserting newly discovered evidence. The trial court heard argument and denied the motion. Granting a motion for a new trial is within the sound discretion of the trial court and this court will not reverse unless the appellant affirmatively demonstrates

an abuse of discretion. *Lacey v. State*, 803 P.2d 1364, 1370 (Wyo.1990).

We apply the four element *Opie* test (originally articulated in *Opie v. State*, 422 P.2d 84 (Wyo.1967)) in reviewing Warren's claim that he is entitled to a new trial on the basis of newly discovered evidence:

> (1) The evidence has come to his knowledge since trial; (2) that it was not owing to the want of due diligence that it did not come sooner; (3) that it is so material that it would probably produce a different verdict, if the new trial were granted; and (4) that it is not cumulative, viz., speaking to facts in relation to which there was evidence at the trial.

*Lacey*, 803 P.2d at 1370 (citation omitted). Warren must satisfy all four criteria to convince this court the trial court abused its discretion in denying his motion for a new trial. *Id.*

 Warren's evidence is in the form of an affidavit from a woman named Katherine Allen, who transported Johnson home from the hospital the night of the shooting. In her affidavit Allen states that her testimony would have been that Johnson was very drunk the night of the shooting, that his mood was suicidal, and that he told her he intended to provoke Warren into shooting him. She states also that she did not testify at Warren's trial because she was afraid of Johnson.

 The state correctly focuses its argument on the third *Opie* criteria, that of evidence so material it is likely to affect the verdict. Accepting the affidavit as true, nothing Johnson said to Allen would affect the trial verdict. Absent circumstances amounting to self-defense, which the jury did not find here, it is no defense to a homicide or an attempted homicide that the victim tried to provoke his own death. Warren provides no authority for his assertion that a victim's state of mind should somehow provide an excuse or otherwise alter the result.

Warren was not aware of Johnson's state of mind, and the evidence did not support a finding of self-defense based on Johnson's actions and the surrounding circumstances. Regardless what Johnson may have de-

sired, Warren remains responsible for his own actions. His shooting at and wounding Johnson were found voluntary and without excuse. Johnson's alleged state of mind, even if accepted as true, would not alter the evidence of any of the elements of the crime for which Warren was convicted or provide him with a legal defense. For this reason Warren is unable to satisfy the third *Opie* criteria and cannot demonstrate an abuse of discretion.

As there is sufficient evidence to support the verdict of guilty of attempted voluntary manslaughter, and there was no abuse of discretion in the denial of Warren's motion for a new trial, his conviction and sentence are

Affirmed.