2010 WY 97

**Leo Gene BLOOMFIELD, Jr., Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–09–0033.

Supreme Court of Wyoming.

July 12, 2010.

---

Representing Appellant: Diane M. Lozano, State Public Defender; Tina N. Kerin, Appellate Counsel; Eric M. Alden, Senior Assistant Appellate Counsel. Argument by Mr. Alden.

Representing Appellee: Bruce A. Salzburg, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Leda M. Pojman, Assistant Attorney General. Argument by Ms. Pojman.

Before KITE, C.J., and GOLDEN, HILL, VOIGT *, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Appellant, Leo Gene Bloomfield, Jr., appeals his conviction for attempted second-degree murder. He contends the jury was improperly instructed on the elements of the crime. He also challenges the district court's evidentiary ruling regarding evidence that he now contends was offered for the purpose of establishing that the victim was the first

*Chief Justice at time of oral argument.*

aggressor in the altercation. He asserts that the rejection of that evidence undermined his claim of self defense. We find no error and affirm.

### ISSUES

[¶ 2] Appellant presents the following issues:

1. Did the trial court err by failing to properly instruct the jury on the elements of attempted second-degree murder?

2. Did the trial court err in refusing the defense's evidence under Rule 404(a)(2)?

### FACTS

[¶ 3] Appellant and the victim, G.C., worked together and also shared a room at an extended stay motel in Gillette, Wyoming. Appellant was dissatisfied with the arrangement. He suspected that G.C. had stolen money from a wallet that he kept under his mattress, and had decided to move out when he received his next paycheck. On Christmas Eve, 2007, an altercation occurred between the two in the motel room. Although Appellant and G.C. provided differing versions of the incident, it was undisputed that Appellant stabbed G.C. several times and then called 911 for emergency assistance.

[¶ 4] When officers arrived, they found G.C. bleeding from several stab wounds. Appellant's hands and arms were bloody. An officer questioned Appellant outside the motel room while emergency personnel attended to G.C. Because it was cold that evening, the officer intended to continue questioning Appellant in a patrol car. Before allowing Appellant in the vehicle, the officer asked Appellant if he had any weapons. Appellant produced a bloody knife from his back pocket. The officer asked Appellant if he had stabbed G.C. with the knife. Appellant replied, "Yeah." Appellant was subsequently arrested, taken to the police station, and interviewed. Police administered a portable breath test during the interview. Ap-

pellant's blood alcohol content registered at .193.

[¶ 5] According to G.C., he had been out drinking during the day.[1] When he returned to the room, Appellant was watching television. G.C. fell asleep face down on his bed without removing his clothes. He was awakened later when he experienced pain in his left shoulder. He testified that Appellant had "slit [his] left shoulder open with the knife." G.C. testified that he stood up and turned around after the stabbing, but could not remember anything after that. When officers arrived, they found G.C. lying on the edge of one bed, propped up by a clothes basket. He had been stabbed several times. According to the emergency room physician, G.C. suffered six stab wounds to the front of his body—one in the neck; two near the collar bone; two on the right side of the chest; and one to the left side of the chest. He also suffered a slash wound on the back of his shoulder. Each of the stab wounds was approximately a finger's length in depth and several missed vital arteries by millimeters. The doctor testified that given the number, depth, and location of the wounds, it appeared that the injuries were inflicted with lethal intent.

[¶ 6] Appellant presented a different version of events. According to Appellant, after G.C. returned to the motel room, an argument erupted over what to watch on television. The argument became physical when G.C. pulled Appellant's hair and hit him on the head. The two then engaged in a shoving match and at some point G.C. blocked the door. Appellant testified that he grabbed a knife and stabbed G.C. twice. After the stabbing, Appellant applied pressure to the wound in an effort to control the bleeding. When that proved unsuccessful, he dialed 911.

[¶ 7] Appellant was subsequently charged with attempted second-degree murder. Trial was held and the jury returned a guilty verdict. Appellant was sentenced to a term of incarceration of not less than twenty nor more than forty years. He filed this timely appeal.

## DISCUSSION

### Jury Instruction

[¶ 8] Appellant contends the district court did not properly instruct the jury on the elements of attempted second-degree murder. He presents two related challenges to the jury instruction. First, he asserts that "intent to kill" is an element of the crime of attempted second-degree murder, and that the jury instructions erroneously failed to require the State to prove that element of the crime beyond a reasonable doubt. Second, he claims that it was error for the district court to combine the elements of attempt with the elements of second-degree murder in one jury instruction.

[¶ 9] Because Appellant did not object to the jury instructions, we will review for plain error.[2] *See Causey v. State,* 2009 WY 111, ¶ 18, 215 P.3d 287, 293 (Wyo.2009). To establish plain error, the appellant must show: 1) the record clearly reflects the incident urged as error; 2) a violation of a clear and unequivocal rule of law; and 3) that he was materially prejudiced by the denial of a substantial right. *Id.* Although we review for plain error, we are guided by the following:

> When reviewing questions involving jury instructions, we afford the trial court significant deference. Jury "[i]nstructions must be considered as a whole, and individual instructions, or parts of them, should not be singled out and considered in isolation." We confine our review to a "search for prejudicial error." "[A]s long as the instructions correctly state the law and the entire charge covers the relevant issue, reversible error will not be found."

---

1. G.C.'s blood alcohol content registered at .3.

2. Appellant contends it is unclear whether an opportunity to make an objection to the challenged instruction was afforded, or if a proper objection was made. The record, however, clearly reflects the following exchange:

> [COURT]: ... All right ... any objections to instructions given or refused?
> [Prosecution]: No, Your Honor.
> [COURT]: [Defense Counsel], any objections to instructions given or refused?
> [Defense Counsel]: No, Your Honor.

*Creecy v. State,* 2009 WY 89, ¶ 18, 210 P.3d 1089, 1093 (Wyo.2009), quoting *Farmer v. State,* 2005 WY 162, ¶ 20, 124 P.3d 699, 706 (Wyo.2005).

[¶ 10] Wyoming's second-degree murder statute provides, in pertinent part: "Whoever purposely and maliciously, but without premeditation, kills any human being is guilty of murder in the second degree[.]" Wyo. Stat. Ann. § 6–2–104 (LexisNexis 2007). Attempt is defined as follows:

(a) A person is guilty of an attempt to commit a crime if:

(i) With the intent to commit the crime, he does any act which is a substantial step towards commission of the crime. A "substantial step" is conduct which is strongly corroborative of the firmness of the person's intention to complete the commission of the crime[.]

Wyo. Stat. Ann. § 6–1–301.

[¶ 11] Appellant contends that Instruction Nos. 1 and 6 erroneously failed to include "intent to kill" as an element of the crime of attempted second-degree murder. Those instructions provided, in pertinent part:

### JURY INSTRUCTION NO. 1

The Information in this case alleges that the defendant committed the crime known as Attempted Murder in the Second Degree.

The necessary elements of the crime of Attempted Murder in the Second Degree, as charged in this case are:

1. On or about December 25, 2007;
2. In Campbell County, Wyoming;
3. The Defendant, Leo Gene Bloomfield, Jr.;
4. Purposely; and,
5. Maliciously;
6. Attempted to kill a human being.

### JURY INSTRUCTION NO. 6

The necessary elements of the crime of Attempted Murder in the Second Degree, as charged in this case are:

1. On or about December 25, 2007;
2. In Campbell County, Wyoming;
3. The Defendant, Leo Gene Bloomfield, Jr.;
4. Purposely; and,
5. Maliciously;
6. Attempted to kill a human being.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the Defendant guilty.

If, on the other hand, you find from your consideration of all of the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the Defendant not guilty.

The jury was also provided jury instructions 8 and 9 which stated:

### JURY INSTRUCTION NO. 8

"Purposely" means that the act which could have caused the death was intentionally done.

"Maliciously" means that the state of mind in which an intentional act is done is without legal justification or excuse. The term "maliciously" conveys the meaning of hatred, ill will, or hostility toward another.

### JURY INSTRUCTION NO. 9

An attempt occurs when a defendant intends to cause the particular crime, in this case second-degree murder, and he does some act which constitutes a substantial step toward that end. "Substantial step" means conduct which is strongly corroborative of the firmness of the defendant's intention to complete the commission of the crime.

[¶ 12] The challenged jury instructions appear in the record, satisfying the first prong of plain error review. Appellant, however, has not established that failure to include "intent to kill" as an element of the crime violates a clear and unequivocal rule of law. Appellant concedes that second-degree murder is a general intent crime and that "intent to kill" is not an element of that crime. He points out, however, that we have previously recognized that "attempt" is a specific intent crime, and argues that the crime charged here, attempted second-degree murder, is a specific intent crime requiring proof of intent to kill. We rejected a

similar argument in *Reilly v. State*, 2002 WY 156, 55 P.3d 1259 (Wyo.2002).

[¶ 13] In *Reilly*, the defendant fired several shots at the victim during an attempted robbery. The defendant also repeatedly beat the victim on the back of the head with a tire iron. The victim survived. The defendant was convicted of attempted second-degree murder, among other crimes. We addressed Reilly's challenge to the attempted second-degree murder charge in the following discussion:

> Appellant contends that the elements of an attempt and second-degree murder are mutually exclusive and/or logically impossible, because an attempt requires that one act with a specific intent, while second-degree murder only requires that one act with a general intent. In support of this argument, appellant cites to cases from other jurisdictions, among them an attempted second-degree murder case in which the North Carolina Supreme Court concluded that, it is "logically impossible" for "a person to specifically intend to commit a form of murder which does not have, as an element, specific intent to kill" and that "attempted murder" is therefore "logically possible only where specific intent to kill is a necessary element of the underlying offense." *State v. Coble*, 351 N.C. 448, 527 S.E.2d 45, 48 (2000). Appellant asks this Court to adopt a similar approach. Her argument presents an issue of law that we review *de novo*. *Worcester v. State*, 2001 WY 82, ¶ 13, 30 P.3d 47, 52 (Wyo.2001).
>
> Wyo. Stat. Ann. § 6–1–301 states, in pertinent part:
>
> > (a) A person is guilty of an attempt to commit a crime if:
> >
> > (i) With the intent to commit the crime, he does any act which is a substantial step towards commission of the crime. A "substantial step" is conduct which is strongly corroborative of the firmness of the person's intention to complete the commission of the crime[.]
>
> According to Wyo. Stat. Ann. § 6–2–104, "[w]hoever purposely and maliciously, but without premeditation, kills any human be-

ing is guilty of murder in the second degree...."

> Appellant's claimed "logical impossibility" arises from the "intent" elements of these respective statutes. In the past, crimes have commonly been categorized by whether they require a "specific intent" or a "general intent." For many years, Wyoming had several pattern jury instructions defining and explaining the two terms, and yet, the differences between the concepts were not always readily discernible.
>
> > Realizing that the distinction between a specific intent crime and a general intent crime is apparently troublesome, we can perhaps clarify it by stating it in a somewhat different way. When the statute sets out the offense with only a description of the particular unlawful act, without reference to intent to do a further act or achieve a future consequence, the trial judge asks the jury whether the defendant intended to do the outlawed act. Such intention is general intent. When the statutory definition of the crime refers to an intent to do some further act or attain some additional consequence, the offense is considered to be a specific intent crime and then that question must be asked of the jury.
>
> *Dorador v. State*, 573 P.2d 839, 843 (Wyo. 1978). Following that logic, an "attempt" is a "specific intent" crime in that the attempt statute requires that one act with the intent to commit the object crime. On the other hand, we have held that second-degree murder is a general intent crime, because it requires proof only that the act was done voluntarily or deliberately, not that there was a specific intent to kill. *Bouwkamp v. State*, 833 P.2d 486, 493 (Wyo.1992); *Ramos v. State*, 806 P.2d 822, 830 (Wyo.1991).
>
> We have acknowledged a trend in the law to dispense with the pattern jury instructions defining and explaining intent due to their "vagueness and general failure to enlighten juries." *Compton v. State*, 931 P.2d 936, 941 (Wyo.1997). Instead, juries should be instructed as to the appropriate intent that is an element of the

particular crime; "it is more important that the jury understand what exactly they [are required] to determine." *Id.* This is consonant with our recent holding that "the test of whether a jury has been properly instructed on the necessary elements of a crime is whether the instructions leave no doubt as to the circumstances under which the crime can be found to have been committed." *Mueller v. State*, 2001 WY 134, ¶ 9, 36 P.3d 1151, 1155 (Wyo.2001). The point is that attempting formally to distinguish between specific intent and general intent, beyond the substantive elements of the crime, may not be the surest way to define the nature of the intent that must be proven.

Our precedent reveals that Wyoming is not a jurisdiction that finds it "logically impossible" to attempt a general intent crime. In several opinions, we have affirmed attempted second-degree murder convictions. *See, e.g., Bilderback v. State*, 13 P.3d 249 (Wyo.2000); *Gabriel v. State*, 925 P.2d 234 (Wyo.1996); and *Dichard v. State*, 844 P.2d 484 (Wyo.1992). We have also previously recognized the crime of attempted voluntary manslaughter. *Warren v. State*, 809 P.2d 788 (Wyo.1991). Wyo. Stat. Ann. § 6–2–105(a) (LexisNexis 2001) provides, in pertinent part:

> A person is guilty of manslaughter if he unlawfully kills any human being without malice, expressed or implied, either:
>
> > (i) Voluntarily, upon a sudden heat of passion[.]

In *Warren*, 809 P.2d at 790, Warren challenged the sufficiency of the evidence to convict him of attempted voluntary manslaughter, arguing that there was no evidence of an attempt to kill. After stating the substantive elements of attempted voluntary manslaughter, this Court proceeded to evaluate the sufficiency of the evidence as to those elements, primarily the evidence supporting Warren's "attempt" to kill his victim and the accompanying inference regarding Warren's intent. *Id.* We concluded that the reasonable inference from the evidence presented was that "Warren attempted to kill [his victim], and a jury could so find beyond a reasonable doubt." *Id.* In the context of appellant's claimed "logical impossibility," particularly the intent element of an attempt versus that of an underlying general intent crime, attempted second-degree murder is indistinguishable from attempted voluntary manslaughter. Indeed, voluntary manslaughter is a "lesser included offense of the crime of second degree murder," and is "a general intent crime that does not require a deliberate intent to kill." *State v. Keffer*, 860 P.2d 1118, 1138–39 (Wyo.1993).

A similar result was obtained in *Compton*, 931 P.2d at 938, where a jury convicted Compton of attempted first-degree sexual assault. On appeal, he questioned the adequacy of the district court's jury instructions, specifically regarding the elements of attempted first-degree sexual assault and its requisite intent. *Id.* at 939. First-degree sexual assault is a general intent crime. *Id.* at 941. This Court found that the district court's jury instructions adequately stated the substantive elements of attempted first-degree sexual assault, and adequately instructed the jury regarding the specific intent element of an attempt. *Id.* at 940–41.

Nothing about the instant case convinces us that we should now find it legally or logically impossible for a person to attempt a general intent crime. As we said in *Compton*, 931 P.2d at 940, 941 (*quoting People v. Frysig*, 628 P.2d 1004, 1007 n. 4, 1008 (Colo.1981)), the question presented to the jury in an attempt case essentially has two levels: (1) whether the person had " 'the intent to perform acts which, if completed, would constitute the underlying offense' "—in other words, did the person intend the conduct that constitutes the substantial step; and (2) whether the person had the intent necessary as an element of the underlying offense—" '[e]xcept for the intentional conduct constituting the substantial step, the requisite culpability is that provided for in the definition of the [underlying] offense.' " That analysis works just as well for attempted crimes that traditionally have been categorized as general intent crimes as it does for attempted crimes that traditionally have been categorized as specific intent crimes.

*Id.,* ¶¶ 6–12; 55 P.3d at 1261–63 (footnote omitted).

[¶ 14]   In this case, the instructions satisfy the two-step inquiry articulated in *Reilly*. When viewed as a whole, the instructions required the jury to find that Appellant intended to take a substantial step toward second-degree murder—in other words, he intended to perform the act of stabbing G.C. The jury then had to find that Appellant stabbed G.C. "purposely" and "maliciously." "Intent to kill" is not an element of the underlying crime of second-degree murder. The district court did not violate a clear and unequivocal rule of law when it did not include that element in the jury instructions.

[¶ 15]   Appellant also challenges the jury instructions because they combined the elements of attempt and second-degree murder into one instruction. A jury instruction is not given in error simply because it combines the elements of two crimes. *Gentilini v. State*, 2010 WY 74, ¶ 20, 231 P.3d 1280, 1286 (Wyo.2010); *Rigler v. State*, 941 P.2d 734, 741–42 (Wyo.1997). The test of adequate jury instructions is "whether the instructions leave no doubt as to the circumstances under which the crime can be found to have been committed." *Mueller*, ¶ 9, 36 P.3d at 1155. Appellant asserts that by giving one instruction with the elements of both second-degree murder and attempt, the district court "effectively eliminated the specific intent to kill from the required elements of the crime."

[¶ 16]   As discussed previously, specific intent to kill is not an element of the crime of attempted second-degree murder. Appellant presents no other basis for finding that the jury instructions confused or misled the jury. He did not object to the instructions given by the district court. The instructions did not violate a clear and unequivocal rule of law and Appellant has failed to establish plain error.

*W.R.E. 404(a)(2) Evidence*

[¶ 17]   Appellant claims the district court erred in refusing evidence offered by the defense under W.R.E. 404(a)(2). "A trial court's decision on the admissibility of evidence is entitled to considerable defer-

ence, and will not be reversed on appeal unless the appellant demonstrates a clear abuse of discretion." *Vigil v. State*, 2010 WY 15, ¶ 11, 224 P.3d 31, 36 (Wyo.2010).

> We have described the standard of an abuse of discretion as reaching the question of the reasonableness of the trial court's choice. Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria. It also means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. In the absence of an abuse of discretion, we will not disturb the trial court's determination. The burden is on the defendant to establish such abuse.

*Holloman v. State*, 2005 WY 25, ¶ 10, 106 P.3d 879, 883 (Wyo.2005). If we conclude the trial court erred, we must then determine if the error was prejudicial. *Bromley v. State*, 2009 WY 133, ¶ 24, 219 P.3d 110, 116 (Wyo. 2009). An error is prejudicial if there is a reasonable possibility the verdict might have been more favorable to the appellant if the error had never occurred. *Callen v. State*, 2008 WY 107, ¶ 5, 192 P.3d 137, 141 (Wyo. 2008). The burden of proving prejudicial error rests with the appellant. *Skinner v. State*, 2001 WY 102, ¶ 25, 33 P.3d 758, 767 (Wyo.2001).

[¶ 18]   Appellant contends that the district court erred in failing to allow evidence that G.C. would become violent when intoxicated. He asserts the evidence was relevant to his claim of self defense and was properly admissible pursuant to W.R.E. 404(a)(2), which provides:

> (a) *Character evidence generally.*—Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except;
>
> . . .
>
> (2) Character of Victim.—Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by

the prosecution in a homicide case to rebut evidence that the victim was the first aggressor[.]

[¶ 19] During cross-examination, defense counsel asked G.C. if he ever had too much to drink and became violent. G.C. responded that he had not. To counter this testimony, Appellant called A.L., the alleged victim in a domestic battery involving G.C., to testify. The district court and counsel engaged in the following discussion regarding her testimony:

[Prosecution]: Judge, it's my understanding she's alleged to be a victim in a potential battery with [G.C.]. I don't see how any of her testimony would be relevant to these proceedings.

[Defense Counsel]: ... *This is a direct refutation of what [G.C.] said when he was on the stand here.... [G.C.] has testified under oath that he does not get belligerent and hit people when he's drinking, and I believe that she can say that's not true.*

...

[Prosecution]: Judge, it's my understanding that [A.L.] is expected to testify that approximately three months ago she may have been in [G.C.'s] presence at such time he was intoxicated and violent, aggressive, or something like that. I think if that testimony is offered to impeach his statement that he was—he doesn't get violent when he drinks, that there should be a limiting instruction to that effect that the Court should give....

[Defense Counsel]: Your Honor, I wouldn't have a problem with a limiting instruction, but in this case [G.C.] is not the defendant, so I don't see what the point is.

[COURT]: Well, the point is that it seems to me that the inferences, *since you're offering it for impeachment, merely go to whether or not [G.C.] told all of the truth, not to his character.*

[Defense Counsel]: *That's correct.*

[COURT]: All right. So you won't be permitted to argue—you can argue that he was untruthful, if that, in fact, is the way the testimony came out, but to argue that he's a batterer as a result of this testimony is something completely different, isn't it?

[Defense Counsel]: Yes.

[COURT]: Okay.

[Defense Counsel]: I have no problem with that.

(Emphasis added.) Appellant contends that the district court erred when it limited A.L.'s testimony to impeachment purposes. He asserts that the testimony should have been admitted under W.R.E. 404(a)(2) as proof that G.C. was the first aggressor.

[¶ 20] "It is settled law that a proponent of evidence has the burden to apprise the trial court that a rule of evidence permits the admission of that evidence." *Moe v. State*, 2005 WY 149, ¶ 9, 123 P.3d 148, 151 (Wyo.2005). "[T]he offer of proof must specifically indicate the purpose of the testimony." *Pack v. State*, 571 P.2d 241, 245 (Wyo.1977). Defense counsel did not offer the evidence for substantive proof of the victim's character. From the context of the discussion above, it is clear that the evidence was being introduced to impeach G.C.'s testimony. Defense counsel stated he had "no problem" offering the testimony for impeachment purposes only. He also assured the court that he did not intend to argue that G.C. was a batterer. Appellant never sought admission of the evidence for a purpose allowed by W.R.E. 404(a)(2).

[¶ 21] Additionally, even though the district court stated the testimony was admitted for impeachment purposes only, no limiting instruction was ever given to the jury. A.L. testified that she and G.C. lived together for about three weeks, and that he became violent after consuming alcohol. She also testified as follows:

[Defense Counsel]: And what did he usually drink?

[A.L.]: Traveler vodka and a 6–pack of beer.

Q: And when—when those happened, did he become belligerent?

A: Belligerent and violent.

Q: Okay. What did he do?

A: Pulled my hair. Refused to let me leave. Slap me on the back of the head.

Q: Okay. Did you ever try to get away?

A: Yes, I did.

Q: What happened?

A: He ripped my hair out.

Q: And—

A: Held me against my will.

Q: Would he let you leave?

A: No.

Q: Get between you and the door?

A: Uh-huh.

Q: And so if he were to tell us that he does not get belligerent when he drinks—

A: That is not the truth.

Q: —that's not true?

A: He does get very violent.

Defense counsel made reference to A.L.'s testimony in his closing statements:

> [T]he guy says when he drinks, he doesn't get belligerent, that he doesn't get violent. Well, you heard [A.L.]. I can't speak for a lot of people, or any others, but at least he didn't tell you the truth in that respect. He did not tell the truth.

Because no limiting instruction was given, the jury was free to consider A.L.'s testimony as evidence that G.C. had a character trait for violence when he was intoxicated. The jury could also consider the testimony as corroborating evidence of Appellant's theory that G.C. was the first aggressor. Appellant has failed to establish abuse of discretion or prejudice.

■■■ [¶ 22] Appellant also claims the district court erred when it did not allow him to introduce evidence that G.C. had been convicted of misdemeanor battery in February 2007. The conviction included an affidavit of probable cause stating that G.C. was intoxicated during the incident. During cross-examination, after G.C. denied that he became violent when intoxicated, defense counsel requested a conference at the bench:

> [Defense Counsel]: Just to give you notice, I'm going to pursue the charges he's had where he ... got drunk and hit women and was convicted for that. They're mis-

demeanor charges, but this is not a [W.R.E.] 609 type situation.[3] *This is directly in response to his statement it never happened.*

(Emphasis added.) The prosecution objected, claiming the questions constituted improper impeachment and were irrelevant. Defense counsel responded:

> They have to do with the issues in this case, Your Honor. This is not 609 impeachment. This is—the issue in this case is ... whether this man reacts that way under the [influence of] alcohol, *and he's directly denied it,* and I need to be able to ask him about those two and why he's in jail right now.

(Emphasis added.) The district court did not allow Appellant to question G.C. about the incident during cross-examination.

■■■ [¶ 23] Although defense counsel clearly stated which rule did not apply, he did not apprise the court that he sought admission of the evidence under W.R.E. 404(a)(2). Though it is unclear, the discussion indicates that Appellant sought admission of the evidence for impeachment purposes. Defense counsel did not argue that the evidence supported a theory that G.C. was the first aggressor and never mentioned Appellant's theory of self defense. Additionally, Appellant made no explicit offer of proof concerning the misdemeanor battery.

> [T]here is only one prudent way for an offer of proof to be made at trial. The attorney who seeks to offer evidence, which has been refused or to which an objection has been upheld, should take the initiative. The offer of proof should then take the form of counsel's eliciting the proposed testimony directly from the witness, or entering the tangible evidence in the record, all outside of the hearing of the jury.

*Rudolph v. State,* 829 P.2d 269, 275 (Wyo. 1992). "The lack of an offer of proof impacts

---

3. W.R.E. 609 provides, in pertinent part:
   (a) *General rule.*—For the purpose of attacking the credibility of a witness,
   (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted ... if the crime was punishable by death or imprisonment in excess of one

year under the law under which the witness was convicted ...; and
   (2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

the district court's ruling and severely impedes appellate review." *Hermreck v. State,* 956 P.2d 335, 338 (Wyo.1998). Appellant did not preserve the offered evidence in the record and his assertion that the evidence was admissible under W.R.E. 404(a)(2) is raised for the first time in this appeal. Under these circumstances, we cannot conclude the district court abused its discretion.

[¶ 24] We also find that Appellant has failed to establish that he was prejudiced by the ruling. "The defender can only use that degree of force necessary to relieve the risk of harm." *Braley v. State,* 741 P.2d 1061, 1067 (Wyo.1987), quoting *Leeper v. State,* 589 P.2d 379, 383 (Wyo.1979). The jury was instructed on the law of self defense as follows:

### JURY INSTRUCTION NO. 13

If the defendant had reasonable grounds to believe and did believe that he was in imminent danger of death or serious bodily harm from which the defendant could be saved only by using deadly force against an assailant, the defendant had the right to use deadly force in self-defense. "Deadly force" means force which is likely to cause death or serious bodily harm.

The circumstances under which the defendant acted must have been such as to produce in the mind of a reasonably prudent person, similarly situated, the reasonable belief that the assailant was about to kill the defendant or do serious bodily harm to the defendant. The danger must have been apparent, present and imminent or must have appeared to be so under the circumstances.

If the defendant believed that he was in imminent danger of death or serious bodily harm, and that deadly force was necessary to repel such danger, and if a reasonable person in a similar situation seeing and knowing the same facts would be justified in believing that he was in similar danger, the defendant would be justified in using deadly force in self-defense. The defendant would be justified even though the appearance of danger later proved to be false and there was actually neither purpose on the part of the assailant to kill the defendant or do the defendant serious bodily harm nor imminent danger that it would be done, nor actual necessity that deadly force be used in self-defense. If the person so confronted acts in self-defense upon such appearance of danger from honest belief, the right of self-defense is the same whether the danger is real or merely apparent.

### JURY INSTRUCTION NO. 15

One who has reasonable grounds to believe that another will attack him, and that the anticipated attack will be of such a character as to endanger his life or limb, or to cause him serious bodily harm, has a right to arm himself for the purpose of resisting such an attack.

If the defendant armed himself in reasonable anticipation of such an attack, that fact alone does not make the defendant the aggressor or deprive the defendant of the right of self-defense.

[¶ 25] Appellant testified that he and G.C. engaged in a shoving match. They were "scrapping" and "wrestling." He stated that he grabbed the knife because he did not want to get hurt and wanted to get out of the situation. He never indicated that he feared G.C. would kill him or inflict serious injury. There was no evidence that Appellant was in imminent danger of death or serious bodily harm, or that other circumstances existed justifying the multiple stabbings. Appellant has failed to demonstrate any likelihood that the verdict would have been more favorable had the district court allowed the evidence.

[¶ 26] Affirmed.