# IN THE SUPREME COURT, STATE OF WYOMING

# 2013 WY 67

APRIL TERM, A.D. 2013

May 31, 2013

JESSY MICHAEL DENNIS,

Appellant
(Defendant),

v.                                                                        S-12-0190

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
*The Honorable Michael Davis, Judge*

*Representing Appellant:*
> Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Eric M. Alden, Senior Assistant Appellate Counsel.  Argument by Mr. Alden.

*Representing Appellee:*
> Gregory A. Phillips,  Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Theodore R. Racines, Senior Assistant Attorney General; Christyne M. Martens, Assistant Attorney General.  Argument by Ms. Martens.

*Before KITE, C.J., HILL, BURKE, J.J., GOLDEN, J., Retired, and WILKING, D.J.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**WILKING, District Court Judge.**

[¶1]    A jury convicted Jessy Michael Dennis (Dennis), of aggravated burglary in violation of Wyo. Stat. Ann. § 6-3-301(c)(i) (LexisNexis 2011).  Dennis now appeals his conviction.   He contends there was insufficient evidence of a *corpus delicti* and no evidence was presented to contradict the innocent intent expressed in his extrajudicial statements.   He also argues the district court erred by declining his proposed specific intent instruction and adopting instructions that did not adequately explain the elements of aggravated burglary.  We affirm.

## ISSUES

[¶2]    The State adequately describes the issues presented to the Court:

> I.   Wyoming law requires independent proof of *corpus delicti* before an admission can be considered as evidence supporting a conviction.  Dennis admitted he entered the victims' unlocked home and took a pistol, which he later returned.   The victims testified consistently with that admission--that someone entered their home without permission and removed a pistol.   Did this testimony provide sufficient corroboration of Dennis' admissions so that the jury could consider those admissions and so that the jury's guilty verdict was supported by sufficient evidence?

> II.  The test for jury instructions is whether they "leave no doubt as to the circumstances under which the crime can be found to have been committed."   The district court gave jury instructions about aggravated burglary that closely tracked the applicable statutory language, and Dennis agreed at trial that those instructions correctly stated the law.   However, he proposed an additional instruction on the specific intent element of aggravated burglary which the court refused because it was repetitive and confusing.  Did the court adequately instruct the jury on the elements of aggravated burglary?

**FACTS**

**A. Evidence at Trial**

[¶3] On June 28, 2011, the State charged Dennis with aggravated burglary in violation of Wyo. Stat. Ann. § 6-3-301(c)(i). Dennis' trial began on February 6, 2012, and the jury returned a guilty verdict on February 7, 2012. The prosecution presented four witnesses-- Janelle Johnson, Brady Johnson, Star Jones,[1] and Deputy Brandi Wagner of the Laramie County Sheriff's Department. Dennis did not testify on his own behalf.

[¶4] Janelle and Brady Johnson testified that they met Dennis at church and became friends in 2010. The Johnsons were aware of Dennis' troubled past when they befriended him. During the course of their friendship, the Johnsons invited Dennis to their home several times. Their home was located approximately ten miles outside of Cheyenne, Wyoming. Mr. Johnson also had a construction business with Dennis.

[¶5] Star Jones was a mutual friend of Dennis and the Johnsons. Jones testified that on May 26, 2011, Dennis met with her after work at a local restaurant in Cheyenne. Dennis appeared happy at lunch and showed Jones pictures of his baby. He told Jones he knew the Johnsons usually kept their home unlocked, and that he went to their home when he knew Mr. Johnson was out of town and Mrs. Johnson was at work. Once there, he entered the home and removed an item from underneath the Johnsons' bed. After leaving the home, Dennis told Jones he drove his truck "out to the middle of nowhere," because he was "really distraught," and he "was just going to take care of it, and that he wouldn't have to deal with it anymore." During this explanation, Dennis put his hand under his chin, and gestured, stating he "was going to end it all."

[¶6] Dennis told Jones that he changed his mind about "ending it all" and tried to return the item he had taken from the Johnsons' home, but found their house was locked. He asked Jones if she could return the item for him. Jones had never been in the Johnsons' home, so Dennis had to explain where the item should be returned, and he drew a layout of the home for her. Jones refused the request and offered instead to inform the Johnsons that Dennis needed to speak with them so he could settle the matter himself. During the May 26, 2011, conversation with Jones, Dennis never explicitly identified the item he had taken from the Johnsons' home. Jones testified she assumed it was a gun and that Dennis had waited a day or two after taking it before he attempted to return it.

[¶7] On the evening of May 27, 2011, Jones and the Johnsons attended a movie together. Afterwards, Jones told the Johnsons that they should contact Dennis, as he needed to speak with them. After Jones and the Johnsons exchanged several text

---

[1] The record refers to "Star Jones and Star Polley." Star Polley married between the time of the incident and trial and changed her name as a result. The Court will refer to her as Star Jones or Jones.

messages, it became clear that Dennis had taken something from under the bed in the Johnsons' home. Jones indicated she did not know what the item was, but knew it belonged under their bed. From this, the Johnsons knew the missing item was likely a pistol, as it was the only item they kept beneath the bed.

[¶8] When the Johnsons arrived home, they checked underneath their bed and discovered Mrs. Johnson's Ruger pistol was missing. The pistol was a gift from Mrs. Johnson's father, which she kept underneath her side of the bed for protection. The Johnsons kept the pistol in that location so it could not be seen when the bedroom was entered. The Johnsons had not given anyone, including Dennis, permission to enter their home or to move the pistol.

[¶9] The Johnsons reported the matter to the Laramie County Sheriff's Department and continued to search for the pistol. Mr. Johnson eventually found the pistol in his truck. Mr. Johnson testified that he had been out of town and had arranged for Dennis to return a nail gun he had borrowed by leaving it in Mr. Johnson's unlocked truck. The pistol was loaded, in its holster, and under a duster when Mr. Johnson found it. The Johnsons did not place the pistol in Mr. Johnson's truck.

[¶10] The sheriff's department investigation did not reveal any signs of forced entry and no items other than the pistol were taken.

[¶11] On May 29, 2011, Mr. Johnson saw Dennis at church and confronted him about taking the pistol. Dennis replied that he was not supposed to find out and asked how the Johnsons knew the pistol had been taken. Dennis asserted that he did not actually break in since the home was unlocked. Mr. Johnson testified that the conversation clearly pertained to the pistol and not the nail gun. Later the same day, Dennis left a voicemail on Mr. Johnson's cellular phone asking to meet with him to talk about the incident. Dennis also asked Mr. Johnson to tell the police that the whole thing was about a nail gun and not a pistol because he could get into a lot of trouble.

[¶12] Dennis also contacted Jones and insisted she recall the exact words she used to describe the situation to the sheriff's department. During that conversation, he tried to convince Jones that the incident was a misunderstanding and that he had eventually returned the gun. Jones testified she was sure Dennis used the word "gun" and not "nail gun," and she did not know anything about Dennis borrowing a nail gun.

[¶13] At trial, the State relied primarily on witness testimony and photographs of the Johnsons' gun, their house, bedroom, and truck. The State did not present any forensic or expert testimony. At the close of the State's case, Dennis moved the district court for a judgment of acquittal. Dennis argued the State had not presented sufficient evidence of *corpus delicti* independent from Dennis' extrajudicial statements. The district court denied the motion.

[¶14] Dennis did not testify or offer any evidence. Defense counsel gave a brief closing argument. Dennis disagreed with his counsel's closing statement and immediately sought to fire his counsel and proceed *pro se*. The district court granted leave for Dennis to proceed without counsel, but did not allow Dennis to present new evidence or to address the jury as the evidence had been closed and his counsel had already made a closing argument. The jury convicted Dennis of aggravated burglary.

[¶15] Dennis filed *pro se* motions for acquittal and for a mistrial. The district court held a hearing on both motions and denied them.

[¶16] The district court sentenced Dennis to not less than five years, nor more than seven years, of imprisonment, which was suspended in favor of five years of probation. Dennis' term of probation was consecutive to the sentence he received for a federal charge of being a felon in possession of a firearm.

## B. Jury Instructions

[¶17] Prior to trial, the State and Dennis submitted proposed jury instructions. The instructions were substantially similar. However, they differed with regard to the elements of aggravated burglary. Dennis offered an instruction on specific intent, which the district court refused.

[¶18] The refused instruction read:

> Aggravated Burglary is a specific intent crime.
>
> Specific Intent means more than general intent to commit the act. To prove a crime which involves specific intent, the prosecution must prove beyond a reasonable doubt:
>
> (1) That the Defendant did the act charged; and
>
> (2) That he did it with the specific intent described in the crime charged. The specific intent must be proved beyond a reasonable doubt.

[¶19] The district court held the instruction merely repeated the content of other instructions and was confusing as worded. The district court instructed the jury as to the elements of aggravated burglary in Instruction Nos. 4, 5, 6, 7, 8, and 9.

4

**Instruction No. 4**

The elements of the crime of Aggravated Burglary, as charged in this case, are as follow:

1.    On or about the 26th day of May, 2011

2.    In Laramie County, Wyoming

3.    The Defendant, Jessy Michael Dennis,

4.    While in the course of committing the crime of burglary

5.    Became armed with a deadly weapon.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the Defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the Defendant not guilty.

**Instruction No. 5**

"Burglary" means the act of entering or remaining without authority in a building, occupied structure or vehicle or separately secured or occupied portion thereof, with intent to commit larceny.

**Instruction No. 6**

"Occupied structure" means a structure where any person lives or carries on business or other calling, whether or not a person is actually present.

**Instruction No. 7**

"Larceny" means the act of stealing, taking and carrying, leading or driving away the property of another with intent to deprive the owner or lawful possessor.

5

## Instruction No. 8

"Deprive" means:

    a.    To withhold property of another permanently or for so extended a period as to appropriate a major portion of its economic value or with intent to restore only upon payment of reward or other compensation; or

    b.    To dispose of property so as to make it unlikely that the owner will recover it.

## Instruction No. 9

The term "deadly weapon" includes a firearm.

[¶20] The State proposed instructions on the meaning of "occupied structure" and "deadly weapon," but the district court refused those instructions and instructed the jury on those terms using different wording. Instruction Nos. 4, 5, 7, and 8 were given as proposed by Dennis.

[¶21] Neither party objected to the instructions at the formal instruction conference held on February 7, 2012.

## DISCUSSION

### I. Sufficiency of the Evidence

[¶22] Dennis argues there was insufficient evidence, in the absence of his extrajudicial statements, to convict him of aggravated burglary. He asserts his extrajudicial statements could not be used to convict him because the State did not present sufficient independent evidence of the crime as required by the *corpus delicti* doctrine. He also argues evidence was not presented to contradict the innocent intent he alleges was present in his extrajudicial statements. Dennis contends that he intended the gun be returned to the Johnsons after he used it to commit suicide, therefore he lacked the requisite intent to deprive.

[¶23] We recently reiterated our standard of review for claims of insufficient evidence:

> [W]e examine and accept as true the State's evidence and all reasonable inferences which can be drawn from it. We do not

6

> consider conflicting evidence presented by the defendant. We do not substitute our judgment for that of the jury; rather, we determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt. This standard applies whether the supporting evidence is direct or circumstantial.

*Craft v. State*, 2013 WY 41, ¶ 18, 298 P.3d 825, 831 (Wyo. 2013) (quoting *Dawes v. State*, 2010 WY 113, ¶ 17, 236 P.3d 303, 307 (Wyo. 2010)).

[¶24] "In Wyoming, 'independent proof of the *corpus delicti* must exist apart from a defendant's extrajudicial confession or admission.'" *Mersereau v. State*, 2012 WY 125, ¶ 65, 286 P.3d 97, 121 (Wyo. 2012) (quoting *Jones v. State*, 2010 WY 44, ¶ 11, 228 P.3d 867, 870 (Wyo. 2010)). However, that corroborating evidence need only consist of substantial evidence that the offense has been committed, so that the evidence as a whole proves beyond a reasonable doubt that the defendant is guilty of the crime charged. *Simmers v. State*, 943 P.2d 1189, 1199 (Wyo. 1997) (citing *Opper v. United States*, 348 U.S. 84, 93, 75 S.Ct. 158, 164-65, 99 L.Ed. 101 (1954)). "It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth. Those facts plus the other evidence besides the admission must, of course, be sufficient to find guilt beyond a reasonable doubt." *Opper*, 348 U.S. at 93, 75 S.Ct. at 164-165. Each case is unique and therefore the quantity and type of independent corroborating evidence depends upon the facts of each case. *Simmers*, 943 P.2d at 1199 (citation omitted). Corroborating evidence may include circumstantial evidence. *Id*.

[¶25] In his initial conversation with Jones, Dennis admitted he entered the Johnsons' home and removed an item from under their bed. In the same conversation, he asked Jones to return the item for him and he provided a detailed description of the Johnsons' home for Jones. When Dennis was confronted by Mr. Johnson at church, he disputed that his actions constituted a burglary because the home was unlocked. He asked Mr. Johnson to tell the police that the incident in question involved a nail gun and not a pistol. When he questioned Jones about what she told law enforcement, Dennis admitted to Jones that the item he removed from the home was a gun and that he returned it to Mr. Johnson's truck.

[¶26] The record in this case contains independent evidence of the crime which corroborates Dennis' extrajudicial statements. Mr. and Mrs. Johnson testified that the pistol was usually stored under Mrs. Johnson's side of the bed. They also testified no one had permission to enter their home or remove the pistol. The Johnsons did not place the pistol in the truck where it was eventually found. Mr. Johnson testified that Dennis knew he would be out of town when he made arrangements with him to return a borrowed nail gun by putting it in Mr. Johnson's unlocked truck. Deputy Wagner testified that there was no sign of forced entry into the home.

[¶27] Jones' testimony also corroborated Dennis' extrajudicial statements. Jones testified she never went into the Johnsons' home, but was able to tell the Johnsons they were missing an item from underneath their bed. The Johnsons in turn testified they knew the item was a pistol because that was the only item they kept under their bed. The evidence in the record, when viewed in total, provides sufficient corroborating evidence of an aggravated burglary.

[¶28] Dennis argues there was insufficient evidence to contradict the innocent intent he expressed in his extrajudicial statements. He contends the inherent intent in his statements was that he only borrowed the pistol to commit suicide. As such, he disputes the evidence sufficiently demonstrated he had a larcenous intent when he took the Johnsons' pistol.

[¶29] Wyo. Stat. Ann. § 6-3-402(a) (LexisNexis 2011) defines larceny:

> (a) A person who steals, takes and carries, leads or drives away property of another with intent to deprive the owner or lawful possessor is guilty of larceny.

Deprive is defined as:

> (A) To withhold property of another permanently or for so extended a period as to appropriate a major portion of its economic value or with intent to restore only upon payment of reward or other compensation; or
>
> (B) To dispose of the property so as to make it unlikely that the owner will recover it.

Wyo. Stat. Ann. § 6-3-401(a)(ii) (LexisNexis 2011).

[¶30] "The intent to steal can be established by a wide variety of direct and circumstantial evidence." *Bush v. State*, 908 P.2d 963, 967 (Wyo. 1995). The return of property does not defeat proof of an initial intent to steal. *E.g., Wetherelt v. State*, 864 P.2d 449, 452 (Wyo. 1993) (holding there was sufficient evidence for a larceny conviction even when a defendant returned some of the victim's property). Nevertheless, "[w]e have consistently held that, even though it is possible to draw other inferences from the evidence which has been presented, the jury has the responsibility to resolve conflicts in the evidence." *Swanson v. State*, 981 P.2d 475, 479 (Wyo. 1999) (citations omitted).

[¶31] Dennis told Jones he had been inside the Johnsons' home before the pistol was discovered missing. He gave Jones a detailed explanation of the layout of the home, and

8

he admitted he entered the home without permission when the Johnsons were not present. He also sought to conceal his crime. He asked Jones to return the stolen pistol. He told Mr. Johnson that he was never supposed to find out about the missing gun. He quizzed Jones about the exact language she used to describe the incident to law enforcement and asked Mr. Johnson to tell authorities the whole incident was about a nail gun instead of a pistol. Attempts at concealing a crime support an inference of an intent to deprive. *E.g., Walston v. State*, 954 P.2d 987, 989 (Wyo. 1998) ("[e]vidence to support the inference of appellant's intent to steal includes the fact that . . . he initially denied being in the home when questioned by an officer; he pawned the stolen items using an alias . . . ."); *Leppek v. State*, 636 P.2d 1117, 1119 (Wyo. 1981); *Mirich v. State*, 593 P.2d 590, 593 (Wyo. 1979); *see e.g. Dreiman v. State*, 825 P.2d 758, 761 (Wyo. 1992) (holding that the return of keys and a calendar after copying them still qualified as an intent to deprive the victim of their property).

[¶32]  Dennis insists that his intent upon entering the Johnsons' home does not qualify as an intent to deprive because his statements make clear he borrowed the Johnsons' pistol to commit suicide. He relies on *Eagan v. State*, 58 Wyo. 167, 128 P.2d 215, 226 (1942), to argue his alleged innocent motive cannot be disregarded and that, accordingly, there was no proof of his intent to deprive the Johnsons' of their pistol. In *Eagan* we said:

> Where an accused is the sole witness of a transaction charged as a crime, as in the case at bar, his testimony cannot be arbitrarily rejected, and if his credibility has not been impeached, and his testimony is not improbable, and is not inconsistent with the facts and circumstances shown, but is reasonably consistent therewith, then his testimony should be accepted.

128 P.2d at 226 (citations omitted). The State argues *Eagan* is inapplicable here because Dennis' credibility was impeached. After a review of the record, we agree with the State.

[¶33]  Dennis' admissions raised considerable doubt about his credibility. He asked Mr. Johnson to lie to law enforcement about the details of the incident and told him he was never supposed to know that Dennis had taken the gun. Dennis admitted entering the Johnsons' home without their permission and tried to have Jones re-enter the home, again without the Johnsons' permission, to return the pistol for him. When viewing these admissions in a light most favorable to the State, a jury could have reasonably doubted Dennis' credibility.

[¶34]  Alternatively, Dennis' alleged intent upon entering the home is not inconsistent with an intent to deprive. Dennis asserts his intent upon entering the home was to borrow the Johnsons' gun to commit suicide. A reasonable jury could find that, by entering the home with such an intent, he did not plan on returning the pistol--if he had accomplished

9

his goal of committing suicide, then he would have lacked the capacity to return the gun. As a result, Dennis' own alleged intent for entering the home was consistent with an intent to permanently deprive the Johnsons of their pistol or to dispose of it so as to make it unlikely that the Johnsons would recover it.

## II. Jury Instructions

[¶35] Dennis contends the district court abused its discretion by refusing to give his proposed instruction on specific intent. He argues that the jury instructions did not adequately explain that intent to commit a larceny must be proven beyond a reasonable doubt.

[¶36] This Court grants trial courts "wide latitude in instructing the jury and, as long as the instructions correctly state the law and the entire charge covers the relevant issue, reversible error will not be found." *Mowery v. State*, 2011 WY 38, ¶ 13, 247 P.3d 866, 870 (Wyo. 2011) (quoting *Iseli v. State*, 2007 WY 102, ¶ 9, 160 P.3d 1133, 1135 (Wyo. 2007)). The test for instructions is "whether the instructions leave no doubt as to the circumstances under which the crime can be found to have been committed." *Burnett v. State*, 2011 WY 169, ¶ 14, 267 P.3d 1083, 1087 (Wyo. 2011) (quoting *Bloomfield v. State*, 2010 WY 97, ¶ 15, 234 P.3d 366, 373 (Wyo. 2010)). "The refusal to give a requested jury instruction is reviewed for an abuse of discretion." *Mowery*, 2011 WY 38, ¶ 13, 247 P.3d at 870 (citing *Pina v. Christensen*, 2009 WY 64, ¶ 8, 206 P.3d 1298, 1300 (Wyo. 2009)).

[¶37] Dennis proposed the following instruction on specific intent:

> Aggravated burglary is a specific intent crime.
>
> Specific Intent means more than the general intent to commit the act. To prove a crime which involves specific intent, the prosecution must prove beyond a reasonable doubt:
>
> (1) That the Defendant did the act charged; and
>
> (2) That he did it with the specific intent described in the crime charged. The specific intent must be proved beyond a reasonable doubt.

[¶38] The district court found the instruction to be duplicative of other instructions and potentially confusing. Dennis claims that his defense was that he lacked the required intent for the crime charged and that this instruction was his "theory of defense" instruction. "[A] defendant has the right to have instructions on his theory of the case or his theory of defense presented to the jury if the instructions sufficiently inform the jury

10

of the theory or defense and if competent evidence exists which supports the law expressed in the instructions." *Olsen v. State*, 2003 WY 46, ¶ 134, 67 P.3d 536, 585 (Wyo. 2003) (citation omitted). However, refusing to give an instruction because it is redundant is not an abuse of discretion. *Iseli*, 2007 WY 102, ¶ 15, 160 P.3d at 1138. "A trial court may properly refuse to give a proposed instruction if it is erroneous, confusing, argumentative, or if the instruction unduly emphasizes one aspect of the case, the law, or the defendant's version of the events." *Farmer v. State*, 2005 WY 162, ¶ 23, 124 P.3d 699, 707 (Wyo. 2005) (citations omitted). Furthermore, a "trial court can properly refuse an instruction which merely rephrases the jury's obligation to find all elements beyond a reasonable doubt . . . ." *Chavez-Becerra v. State*, 924 P.2d 63, 67 (Wyo. 1996) (citing *Virgilio v. State*, 834 P.2d 1125, 1128 (Wyo. 1992)).

[¶39] Dennis' proposed "theory of defense" was that the State simply had not met its burden of proving the specific intent element of aggravated burglary. Such a claim does not require a theory of defense instruction as it is more appropriately categorized as a claim of innocence. Dennis' proposed instruction duplicated the more specific instructions on the elements of aggravated burglary contained in Instruction Nos. 4, 5, 7 and 8. Instruction No. 4 made clear the State had to prove beyond a reasonable doubt that Dennis committed the crime of burglary. Instruction No. 5 outlined the required specific intent for burglary including an intent to commit a larceny. Instruction Nos. 7 and 8, by defining larceny and deprive, further detailed that the intent to commit a larceny requires an intent to deprive.

[¶40] Accordingly, Instruction Nos. 4, 5, 7, and 8, when read together, provided a detailed and contextualized question, concerning intent, for the jury to consider. Indeed, we have noted that, "juries should be instructed as to the appropriate intent that is an element of the particular crime; it is more important that the jury understand what exactly they [are required] to determine." *Keats v. State*, 2003 WY 19, ¶ 13, 64 P.3d 104, 108 (Wyo. 2003) (internal citation and quotation marks omitted) (quoting *Reilly v. State*, 2002 WY 156, ¶ 9, 55 P.3d 1259, 1262-63 (Wyo. 2002) *abrogated by Granzer v. State*, 2008 WY 118, 193 P.3d 266 (Wyo. 2008)). The district court did not abuse its discretion by refusing Dennis' proposed specific intent instruction. The proposed instruction presented an ambiguous and duplicative question for the jury to answer. "[A] defendant is not entitled to a particularly worded jury instruction where jury instructions given cover the substance of the requested jury instruction." *Ortega v. State*, 966 P.2d 961, 966 (Wyo. 1998) (citation omitted). The district court properly refused a redundant instruction. *Iseli*, 2007 WY 102, ¶ 15, 160 P.3d at 1138.

[¶41] Dennis also argues that the following instructions failed to adequately inform the jury of the level of specific intent required to convict him:

11

**Instruction No. 4[2]**

The elements of the crime of Aggravated Burglary, as charged in this case, are as follows:

1.    On or about the 26th day of May, 2011

2.    In Laramie County, Wyoming

3.    The Defendant, Jessy Michael Dennis

4.    While in the course of committing the crime of burglary

5.    Became armed with a deadly weapon.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the Defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the Defendant not guilty.

**Instruction No. 5**

"Burglary" means the act of entering or remaining without authority in a building, occupied structure or vehicle or separately secured or occupied portion thereof, with intent to commit larceny.

**Instruction No. 7**

"Larceny" means the act of stealing, taking and carrying, leading or driving away the property of another with intent to deprive the owner or lawful possessor.

---

[2] Instruction No. 4 mimics the instruction on the elements of aggravated burglary found in the Wyoming Criminal Pattern Instructions 33.01C (2009).

**Instruction No. 8**

"Deprive" means:

      a.    To withhold property of another permanently or for so extended a period as to appropriate a major portion of its economic value or with intent to restore only upon payment of reward or other compensation; or

      b.    To dispose of the property so as to make it unlikely that the owner will recover it.

[¶42]   Dennis did not object to the instructions actually given to the jury; "our review is therefore confined to a search for plain error." *Magnus v. State*, 2013 WY 13, ¶ 23, 293 P.3d 459, 467 (Wyo. 2013) (citing *Sandoval v. State*, 2009 WY 121, ¶ 6, 217 P.3d 393, 395 (Wyo. 2009)).   "Our plain error analysis requires that an appellant 'establish, by reference to the record, a violation of a clear and unequivocal rule of law in a clear and obvious, not merely arguable, way and that the violation adversely affected a substantial right resulting in material prejudice.'" *Magnus*, 2013 WY 13, ¶ 23, 293 P.3d at 467 (quoting *Joreski v. State*, 2012 WY 143, ¶ 11, 288 P.3d 413, 416 (Wyo. 2012)).   Material prejudice is shown when a reasonable possibility exists that, but for the error, the jury would have returned a more favorable verdict.  *Craft v. State*, 2012 WY 166, ¶ 21, 291 P.3d 306, 312 (Wyo. 2012) (citation omitted).

[¶43]   "The purpose of jury instructions is to provide the jury with a foundational legal understanding to enable a reasoned application of the facts to the law.  It is crucial that the trial court 'correctly state the law and adequately cover the relevant issues.'" *Walker v. State*, 2012 WY 1, ¶ 10, 267 P.3d 1107, 1111 (Wyo. 2012) (internal and external citations omitted).   "We do not single out individual jury instructions or parts of them, but rather, we consider the jury instructions as a whole." *Burnett*, 2011 WY 169, ¶ 14 267 P.3d at 1087 (citing *Bloomfield*, 2010 WY 97, ¶ 9, 234 P.3d at 369).   "A person is guilty of aggravated burglary in violation of Wyo. Stat. Ann. § 6-3-301(c)(i) if he, 'in the course of committing the crime of burglary . . . [i]s or becomes armed with or uses a deadly weapon.'" *Counts v. State*, 2012 WY 70, ¶ 50, 277 P.3d 94, 108 (Wyo. 2012). Dennis had to enter the Johnsons' house without their permission and with the intent to commit a larceny in their home to be guilty of a burglary. *Id*. at ¶ 59, 277 P.3d at 110-11 (citing Wyo. Stat. Ann. § 6-3-301(a)).   Larceny occurs when "a person . . . steals, takes and carries, leads or drives away property of another with intent to deprive the owner or lawful possessor . . . ." *Powell v. State*, 2012 WY 106, ¶ 7, 282 P.3d 163, 165 (Wyo. 2012) (quoting Wyo. Stat. Ann. § 6-3-402(a)).   In reviewing Instruction Nos. 4, 5, 7 and 8, and in light of Wyo. Stat. Ann. § 6-3-301, we find the instructions adequately informed

13

the jury of the element of "burglary," including the specific intent to commit larceny and the required intent to deprive for larceny.

[¶44]   In *Burnett*, we held that a series of instructions adequately informed the jury of the elements of attempted second-degree murder.  2011 WY 169, ¶ 18, 267 P.3d at 1088.  In that case, one instruction listed all the elements of attempted second-degree murder but omitted the necessary elements of "maliciously" and "purposely."  *Id*.  Those elements were listed in separate instructions.  *Id*.  We held "[t]hese instructions, as a whole, adequately informed the jury that it must find Mr. Burnett had acted purposely and maliciously in order to convict him of attempted second degree murder."  *Id*. at ¶ 18, 267 P.3d at 1089.   Here, the instructions as a whole adequately informed the jury of the necessity of finding that Dennis entered the Johnsons' home with the intent to commit a larceny and that intent had to include an intent to deprive the Johnsons of their pistol.

[¶45]   Upon review of the instructions given to the jury, the district court did not abuse its discretion in refusing Dennis' specific intent instruction.  It also did not commit plain error in instructing the jury--the jury was sufficiently informed of the grounds upon which they were to find Dennis guilty of aggravated burglary including the requisite intent to deprive.

## CONCLUSION

[¶46]   We find that sufficient independent evidence was presented to corroborate Dennis' extrajudicial statements and to convict him of aggravated burglary.  We further find that the jury was properly instructed.  Affirmed.