2017 WY 111

**Clinton Ray WOODS, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

S-17-0048

Supreme Court of Wyoming.

September 20, 2017

Representing Appellant: Timothy C. Kingston of the Law Office of Tim Kingston, LLC, Cheyenne, Wyoming.

Representing Appellee: Peter K. Michael, Attorney General; David L. Delicath, Deputy Attorney General; Christyne Martens, Senior Assistant Attorney General; Caitlin F. Harper, Assistant Attorney General. Argument by Ms. Harper.

Before BURKE, C.J., and HILL, FOX, KAUTZ, JJ., and KRICKEN, D.J.

KRICKEN, District Judge.

[¶1] Clinton Ray Woods (Woods) was convicted by a jury of three counts of *Sexual Abuse of a Minor in the Second Degree*, in violation of Wyo. Stat. Ann. § 6-2-315(a)(i) (LexisNexis 2013), and one count of *Sexual Abuse of a Minor in the Third Degree*, in violation of Wyo. Stat. Ann. § 6-2-316(a)(i), for his sexual abuse of the fourteen-year-old daughter of his girlfriend. He now appeals, claiming that his trial counsel was ineffective in multiple ways and further asserting that the district court committed reversible error. We affirm.

### ISSUES

[¶2] In his appeal, Woods presents the following issues:

1. Did the Appellant's attorney provide the Appellant ineffective assistance of counsel?

2. Was it deficient performance for the Appellant's attorney to play a forensic interview video of the alleged victim to the jury?

3. Was it deficient performance for the Appellant's attorney not to object to numerous instances of hearsay?

4. Was it deficient performance for the Appellant's attorney not to ask for a limiting expert witness instruction?

5. Was it deficient performance for the Appellant's attorney not to object to admission of the testimony of the state's expert witness?

6. Did the Appellant's attorney's numerous instances of deficient performance prejudice the Appellant?

7. Did the trial court commit reversible error when it failed in its gate keeping function in allowing the state's expert to testify without determining if he should be allowed to testify?

8. Did the trial court commit reversible error when it did not give a limiting expert witness instruction?

### FACTS

[¶3] Although originally charged with additional felony counts, on July 12, 2016, Woods proceeded to a jury trial on three counts of *Sexual Abuse of a Minor in the Second Degree*, in violation of Wyo. Stat. Ann. § 6-2-315(a)(i), and one count of *Sexual Abuse of a Minor in the Third Degree*, in violation of Wyo. Stat. Ann. § 6-2-316(a)(i). The allegations underlying the charges were that Woods had engaged in sexual activity on several occasions with D.O., the fourteen-year-old daughter of his girlfriend, Angel King, some of which was joined in and condoned by King.

[¶4] Ultimately, on November 6, 2014, law enforcement was dispatched to King's home on the report of a domestic disturbance. King told the officer that she had gotten into a fight with Woods and punched him, stating "[h]e's not going to do to my daughter what's been done to me." D.O. denied any improper conduct on Woods' part when the officer so inquired. However, after the officer left, D.O. told her brother that Woods had been sexually abusing her. While at her father's home the following weekend, D.O. also told her father of the abuse. D.O.'s father took D.O. to an attorney's office in Cheyenne, to whom he and D.O. disclosed the sexual abuse. The attorney contacted law enforcement, who ini-

tiated the investigation that culminated in the criminal charges and jury trial.

[¶5] Woods' defense at trial—that he had not committed any of the accused conduct—was based on the lack of corroborating physical evidence and on D.O.'s inconsistent versions of the alleged events. Because the only evidence of the alleged sexual abuse was D.O.'s story, Woods' trial strategy was to challenge her credibility. At trial, the State of Wyoming and defense counsel agreed that the jury should view the video of a pretrial forensic interview conducted with D.O. The State sought to introduce the video to demonstrate D.O.'s prior consistent statements, while Woods believed the video demonstrated D.O.'s prior inconsistent statements that would result in the jury concluding she had lied. The district court expressed its concerns, engaging in the following colloquy with defense counsel:

THE COURT: The Court spent the lunch hour thinking about the video issue. And the last time something like this happened, it resulted in a conviction being reversed, and the matter being remanded to me for a hearing on whether the playing of that video in a child sexual abuse case, forensic interview, was ineffective assistance of counsel. And the Court ultimately determined that it was in that case.

I understand in this case the parties have stipulated to the use of the videos. From the State's standpoint, my understanding would be that the State would contend that the video is admissible under Rule 801 as a prior consistent statement.

The defendant wants portions of the video played to argue that it is a prior inconsistent statement; is that correct?

[DEFENSE COUNSEL]: It is from my point of view, Your Honor. And just to clarify, there are things that were part of the video that referred to the Court's prior ruling on BDSM activities. And there [is] also a part of the video that discusses photographs which he was charged with, which he's now not charged with. And those portions of the video have been redacted.

I think it is relevant to my case. I had talked to [the prosecuting attorney] about

playing the video in another ma[tt]er. And then last night he decided that he wanted it, too. So that's how we have come to this stipulation.

THE COURT: All right. I think it is important to make a record of what your strategy is and what your tactics are, [defense counsel], in playing the video. Have you had a chance to discuss the issue with your client?

[DEFENSE COUNSEL]: Yes. I discussed this issue with my client last night at length and again over the noon hour. And because most specifically as to her testimony and prior statements about the anal rape, the most important part for me. But I think as the jury views the video, they're going to be able to judge her credibility here in court better, given that that interview was given shortly after the incident, and now how she remembers things and how inconsistent the testimony is across the board.

So my client consents to it. And it is my belief, based on my experience as a trial attorney, that this is the most prudent way to proceed.

THE COURT: All right. Very well. But you have visited with Mr. Woods about this issue?

[DEFENSE COUNSEL]: Yes.

THE COURT: I guess the concern that the Court has is that essentially by playing that video again, you're allowing the alleged victim in this case a second opportunity to testify without the benefit of any cross-examination.

[DEFENSE COUNSEL]: Correct.

THE COURT: All right. But it is a deliberate strategy decision on your part?

[DEFENSE COUNSEL]: Absolutely.

THE COURT: All right.

The district court permitted the jury to view the forensic interview.

[¶6] Additionally, the State offered the testimony of Dr. Fred Lindberg, a psychologist who specialized in the area of child sexual abuse. Woods did not object to Dr. Lindberg's testimony or request a pretrial *Daubert* hearing, nor did the district court con-

duct one *sua sponte*. At trial, Dr. Lindberg testified on reporting patterns in juvenile victims of sexual abuse and general characteristics of victims of sexual abuse. At the conclusion of the trial, the district court inquired as to whether counsel wished to have the jury instructed concerning expert witness testimony; both declined and the court omitted the instruction.

[¶7] The jury subsequently convicted Woods of all four offenses for which he was tried. This appeal followed. Further facts will be discussed herein as necessary for a resolution of the issues presented.

## ANALYSIS

[¶8] Woods raises multiple issues on appeal that can be categorized as claims of ineffective assistance of trial counsel and claims of reversible error by the trial court.

### Ineffective Assistance of Trial Counsel

[¶9] Woods claims that trial counsel was deficient in several respects. This Court will address each assertion in turn, as well as any cumulative impact of counsel's alleged deficiencies.

### Standard of Review: Ineffective Assistance of Trial Counsel

[¶10] Issues involving ineffective assistance of counsel involve mixed questions of law and fact, which this Court reviews *de novo*. *Jones v. State*, 2017 WY 44, ¶ 15, 393 P.3d 1257, 1261–62 (Wyo. 2017). In addressing the burden upon a defendant claiming ineffective assistance of counsel, this Court has noted:

> To establish that counsel was ineffective, [a defendant] must show that under the circumstances at the time of a challenged act or omission, his attorney's performance fell below that of a reasonably competent lawyer, and that it is reasonably probable that absent the deficient performance the outcome of the proceeding would have been more favorable to him. *Griggs v. State*, 2016 WY 16, ¶ 36, 367 P.3d 1108, 1124 (Wyo. 2016). This Court does not evaluate counsel in hindsight, but from the perspective available at the time. *Mraz v. State*,

2016 WY 85, ¶ 44, 378 P.3d 280, 291 (Wyo. 2016).

*Jones*, ¶ 14, 393 P.3d at 1261.

### The Forensic Interview

[¶11] Woods first asserts error with respect to the publication to the jury of the forensic interview conducted with D.O. Once D.O. informed law enforcement of the sexual conduct she had engaged in with Woods, she was taken to Safe Harbor, a children's justice center that conducts forensic interviews of children who are alleged victims of serious physical and sexual abuse, for a pretrial forensic interview, where she gave a videotaped statement in response to questions asked of her. Originally, neither the State nor defense counsel intended to play the taped video interview for the jury. However, at trial, both subsequently agreed that it was appropriate to play the interview to the jury. On appeal, Woods now claims his trial counsel was deficient in her representation of him by consenting to the admission of the forensic interview.

[¶12] Other courts have considered similar challenges to effective assistance of trial counsel and have concluded that counsel's strategy was reasonable. *See Hinesley v. Knight*, 837 F.3d 721 (7th Cir. 2016) (counsel's decision not to object to hearsay statements from the child victim and other witnesses was reasonable trial strategy; counsel decided to let all the statements in and point out the inconsistencies); *Delgadillo v. Woodford*, 527 F.3d 919 (9th Cir. 2008) (counsel's failure to object to the admission at trial of live testimony regarding the victim's prior inconsistent statements, instead of having the statements admitted through the transcript of the preliminary hearing, was reasonable trial strategy); *Banks v. Thaler*, No. 4:08-CV-045-Y, 2011 WL 3929202, at *10 (N.D. Tex. Apr. 18, 2011), *report and recommendation adopted*, No. 4:08-CV-045-Y, 2011 WL 3928556 (N.D. Tex. Sept. 7, 2011) (counsel's decision to introduce the videotape to show inconsistencies in the child's testimony and create the appearance that the defense was not trying to hide something from the jury were within the realm of reasonable trial strategy). In *Henry v. State*, 316 Ga.App.

132, 729 S.E.2d 429 (2012), trial counsel failed to object to a taped statement from the child. When his effectiveness was later challenged, trial counsel testified that his trial strategy was to show the discrepancies between what the child was alleged to have said to Lamb and his mother and what he told the interviewer. And he said he wanted the jury to see the videotape of the interview statement because the words the child used in the video were different than the ones his mother and Lamb said he used. *Id.*, 729 S.E.2d at 432. The appellate court concluded that trial counsel was not ineffective. *Id.*, 729 S.E.2d at 432–33. Similarly, an Ohio court addressed the issue, concluding:

We also conclude that counsel was not ineffective when he did not object to allowing the jury to view the videotape of the victim's interview at Care House. At trial, the victim's live testimony was consistent with the videotape, and the defense was given the opportunity to cross-examine the victim before the jury, which allowed questions to challenge the witness's credibility. It was a matter of trial strategy to allow the jury to observe the differences in the live and taped testimony to help them judge credibility, as some details were different. Evid. R. 613(B) specifically allows impeachment by admission of prior inconsistent statements. It is significant that in the video the child first stated that the sexual assault only happened once, then he changed his statement to say it happened again. A defense strategy to allow the jury to compare the victim's two versions of the events could have benefited the defense if the jury had decided to convict on one count of Rape instead of two counts.

*State v. Williams*, 2016-Ohio-322, ¶ 45, 2016 WL 525703 (Ohio Ct. App. 2016).

[¶13] Here, Woods claims his trial counsel was ineffective in agreeing to, even urging, the admission and publication of the forensic interview of D.O. to the jury, as it essentially permitted her a second opportunity to testify while not being subjected to cross-examination during that interview. The district court expressed its concerns regarding the admission of the video, noting that playing such a video can result in reversal. However, trial counsel very specifically, and in response to direct inquiry and careful questioning by the district court, identified her trial strategy and rationale for the admission of the video. The trial strategy was that the jury would see "lies and inconsistencies" between the forensic interview vis-à-vis the victim's trial testimony, leading the jury to question the victim's credibility and render her story implausible. Counsel responded to the trial court's concerns and was absolute in her conclusion that playing the video was the most prudent way to proceed.

[¶14] Additionally, there were, in fact, some inconsistencies in D.O.'s various versions of the events as depicted in the forensic interview as compared to her trial testimony and versions of the events she had recounted to others, most particularly regarding whether Woods had engaged in anal intercourse with D.O., which she first claimed but later recanted. Defense counsel had a clear theme and planned defense throughout the trial: She opened her remarks to the jury by arguing the case came down to "[c]haos, inconsistencies, and consistencies." She cross-examined D.O. on those inconsistencies and carried through her theme in her examination of all witnesses. Finally, in closing argument, defense counsel attempted to tie the inconsistencies together to argue that the jury should acquit Woods.

[¶15] Ultimately, trial counsel's strategy was unsuccessful, but this Court cannot say, in hindsight, that her decision to lodge an attack on the victim's credibility, or her tactics in so doing, amounted to deficient performance. Woods' case was not based on any physical, scientific, or eye-witness evidence; there was no corroborating evidence of D.O.'s version of the events. The result of the trial hinged solely on whether the jury believed D.O.'s testimony and her accounts of the sexual abuse Woods inflicted on her. As recognized in *Strickland v. Washington*, 466 U.S. 668, 690–91, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984), "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that rea-

sonable professional judgments support the limitations on investigation." Here, a strategic decision to attack D.O.'s credibility, under these circumstances, was a reasonable and logical defense, which was defended even upon questioning by the district court as to defense counsel's trial strategy and tactics. The decision to play the video for the jury permitted the jury to note inconsistencies in the victim's statements and to assess her credibility. And, a "jury's rejection of the defense strategy does not necessarily demonstrate ineffective assistance of counsel but merely a defense strategy that the jury did not accept." *Barkell v. State*, 2002 WY 153, ¶ 22, 55 P.3d 1239, 1244 (Wyo. 2002). Though the result may be different under different circumstances, this Court deems it unnecessary to declare counsel's performance deficient in this context.

### *Failure to Object to Hearsay*

[¶16] Woods next challenges trial counsel's performance in failing to object to what he claims are nineteen[1] separate instances of objectionable hearsay. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." W.R.E. 801(c). Hearsay is not admissible unless it falls within a designated hearsay exception. *See* W.R.E. 802.

[¶17] In his opening brief, Woods provides rough references to the trial transcript and paraphrases the testimony to be found in those locations. He then broadly and categorically states: "Each and every one of these questions and their answers were designed to elicit damning hearsay from DO or others in her family. Every one of these questions by the [S]tate [was] improper." Woods provides absolutely no citation to the applicable Wyoming Rules of Evidence or legal analysis regarding the claimed instance of hearsay. He presents this Court no ability to assess his claims of error.

[¶18] Under this Court's longstanding precedent, this "[C]ourt will not frame the issues for the litigants and will not

consider issues not raised by them and not supported by cogent argument and authoritative citation." *Snyder v. State*, 2015 WY 91, ¶ 15 n.1, 353 P.3d 693, 695 n.1 (Wyo. 2015) (quoting *State v. Campbell Cnty. Sch. Dist.*, 2001 WY 90, ¶ 35, 32 P.3d 325, 333 (Wyo. 2001)). While Woods attempted to address the inadequacies in his hearsay analysis in his reply brief, Wyoming Rule of Appellate Procedure 7.03 "does not allow a party who fails to cite authority or adequately present argument in its opening brief to cure these deficiencies by filing a reply brief." *Budd-Falen Law Offices v. Rocky Mtn. Recovery*, 2005 WY 77, ¶ 17, 114 P.3d 1284, 1289 (Wyo. 2005). This Court has refused to consider claims of ineffective assistance of counsel on such grounds before. *See Duke v. State*, 2004 WY 120, ¶ 67, 99 P.3d 928, 949 (Wyo. 2004) ("Because his claim is not supported by cogent argument or legal authority, this Court need not consider it."). In accordance with precedent, this Court will summarily affirm the district court on this issue. *See Allen v. State*, 2002 WY 48, ¶ 72, 43 P.3d 551, 574 (Wyo. 2002) (citing *Basolo v. Gose*, 994 P.2d 968, 970 (Wyo. 2000)).

### *Expert Witness Testimony*

[¶19] At trial, the State called Dr. Fred Lindberg, a psychologist, to discuss "victim behavior." Dr. Lindberg never addressed any of the facts or details of Woods' case but, rather, addressed general issues such as when victims report abuse, the reasons they might not report abuse, and the manner in which victims might report abuse. Woods' trial counsel did not object to Dr. Lindberg's testimony, nor did she request a pretrial *Daubert* hearing. On appeal, Woods claims ineffective assistance of counsel as a result.

[¶20] With respect to this ineffective assistance of counsel claim, Woods must demonstrate that the evidence was objectionable and that a lack of objection was not reasonable trial strategy. *See Mickelson v. State*, 2012 WY 137, ¶ 26, 287 P.3d 750, 757

---

1. Although Woods asserts there were nineteen instances of hearsay, he cites to only seventeen claimed instances in his reply brief.

(Wyo. 2012). Despite Woods' claim that trial counsel should have objected to the testimony on "its relevance, speculative nature, and lack of connection to [Woods'] case or issues presented by the case," Woods does not explain how Dr. Lindberg's testimony was objectionable. Discussion about general victim behavior is proper expert testimony, *see Budig v. State*, 2010 WY 1, ¶ 18, 222 P.3d 148, 156 (Wyo. 2010), which is not to say the witness may testify without limitation. This Court has opined:

> It is well established in Wyoming that an expert witness cannot vouch for the truthfulness or credibility of an alleged victim. *Lessard v. State*, Wyo., 719 P.2d 227, 233 (1986). In *Lessard*, we explained that the question of credibility is for the jury, who are themselves expert in that area. Consequently, the testimony of a psychologist or other expert on the issue of credibility does not assist them and therefore does not satisfy the requirements of Rule 702, W.R.E.
>
> On several occasions, this court has addressed the propriety of expert testimony on the credibility of sexual assault victims. In *Lessard*, supra, a rape crisis counselor testified that most rape victims ask their assailants not to tell anyone about the incident. *Id.* at 233. We held that this testimony was permissible because it helped the jury understand one aspect of the evidence—the victim's request to her assailant—and because the expert's explanation did not constitute testimony with respect to the veracity of the victim. *Id.* at 234. In *Scadden v. State*, Wyo., 732 P.2d 1036 (1987), a police detective testified that victims often delay in reporting sexual abuse or assault, and she went on to explain the reasons for this delay. *Id.* at 1044-45. We held her testimony admissible because it was "offered to rebut the implication by the defense that the victims' delay in reporting the incident was inconsistent with their claims of nonconsensual sexual relations." *Id.* at 1046. In *Griego v. State*, Wyo., 761 P.2d 973 (1988), a rape crisis counselor testified that when the adolescent victim did not immediately flee the scene and report the incident, her behavior was consistent with the typical behavior pattern of adolescent victims of sexual assault. We observed that this testimony helped explain the victim's behavior and held that its admission did not constitute plain error.
>
> In all three of these cases, the challenged testimony was allowed because it assisted the jury in understanding some peculiar aspect of the victim's behavior and because it did not involve a comment on the credibility or truthfulness of the victim. Case law from other jurisdictions supports our conclusion that expert testimony which meets these two criteria does not invade the province of the jury. See, e.g., *People v. Bledsoe*, 36 Cal.3d 236, 203 Cal.Rptr. 450, 681 P.2d 291 (1984); *United States v. Azure*, 801 F.2d 336 (8th Cir. 1986); *State v. Kennedy*, 320 N.C. 20, 357 S.E.2d 359 (1987); *State v. Moran*, 151 Ariz. 378, 728 P.2d 248 (1986); *State v. Catsam*, 148 Vt. 366, 534 A.2d 184 (1987); *Commonwealth v. Ianello*, 401 Mass. 197, 515 N.E.2d 1181 (1987). We realize that in many instances, testimony of this nature will have the incidental effect of supporting or bolstering the credibility of the witness. *Griego*, supra. Nevertheless, that effect alone need not render the testimony inadmissible, as "[m]ost testimony, expert or otherwise, tends to support the credibility of some witness." *State v. Kennedy*, supra, 357 S.E.2d at 367.

*Zabel v. State*, 765 P.2d 357, 360–61 (Wyo. 1988) (footnote omitted). Therefore, expert testimony that discusses the general behavior and characteristics of sexual assault victims and the range of responses to sexual assault encountered by experts generally is admissible. *See Rivera v. State*, 840 P.2d 933, 939 (Wyo. 1992), *overruled on other grounds by Sweets v. State*, 2013 WY 98, ¶ 50, 307 P.3d 860, 876 (Wyo. 2013), (citing *Scadden v. State*, 732 P.2d 1036 (Wyo. 1987)). Such testimony may be relevant and helpful in explaining to the jury the typical behavior patterns of victims of sexual assault. *Rivera*, 840 P.2d at 939 (citing *Griego v. State*, 761 P.2d 973 (Wyo. 1988)). Dr. Lindberg's testimony fell precisely within those parameters. Dr. Lindberg did not comment on D.O.'s specific statements or the truthfulness of her disclo-

sures. His testimony was legally proper; defense counsel's failure to object thereto did not rise to deficient performance sufficient to support a claim of ineffective assistance of trial counsel.

### Failure to Request Limiting Expert Witness Instruction

[¶21] Woods proffers, as an issue, trial counsel's failure to ask for a limiting expert witness instruction given Dr. Lindberg's testimony. However, his brief provides absolutely no argument in support of this issue in the context of ineffective assistance of trial counsel. Rather, he addresses this issue solely in the context of whether the district court erred in not giving a limiting expert witness instruction. Accordingly, this Court will address it below in that context.

### Miscellaneous Other Claimed Deficiencies of Trial Counsel

[¶22] Woods also claims trial counsel erred in several other ways, namely: (1) counsel's *voir dire* was inadequate and she passed the jury for cause without making a single for-cause challenge; (2) counsel failed to review the State's exhibits prior to trial; and (3) counsel failed to object to "two very important questions" that required D.O. to speculate as to why she engaged in sexual activity with Woods.

[¶23] As to the first assertion, Woods provides no explanation regarding why trial counsel's *voir dire* was inadequate, nor does he provide law in support of his claim that counsel was deficient for choosing not to exercise for-cause challenges. As to the second claim, Woods points to one incident during trial when defense counsel had not viewed the actual lingerie worn by D.O., which the State sought to introduce as corroborative evidence. Pictures of the lingerie also were admitted as exhibits. There is no evidence that trial counsel failed to view any other of the exhibits, including the photos of the lingerie, and Woods cites to no supporting authority as to how counsel's failure to view one exhibit, the lingerie, rises to the level to constitute ineffective assistance of trial counsel. Finally, as to the third claim, Woods takes issue with counsel's failure to object to two "very important" questions asked of D.O.: First, D.O. was asked why she complied with Woods' sexual advances. She responded that she wanted to preserve her relationship with her mother. "And I thought that she knew that that's why [Woods] was picking me up from school, um—so I thought Mom wanted it to happen." Second, D.O. was asked whether she had "an understanding of why it was that your mom was handing you the lingerie." She responded, "I had a pretty good idea 'cause I—I knew [Woods] had been coming over. And I didn't know why she wanted me to wear the lingerie, but I knew it was for [Woods], if that makes sense." Neither of these questions required D.O. to speculate. Rather, they solicited her opinion, or understanding, as to the events that occurred and reasons therefore.

[¶24] As to all three claims, under this Court's long-standing precedent, this "[C]ourt will not frame the issues for the litigants and will not consider issues not raised by them and not supported by cogent argument and authoritative citation." *Snyder*, ¶ 15 n.1, 353 P.3d at 695 n.1. This Court summarily affirms cases that are not presented with cogent argument or pertinent authority. *See Allen*, ¶ 72, 43 P.3d at 574. Woods has not demonstrated that trial counsel's performance was deficient, nor has he presented sufficient legal authority or cogent argument to support these claims.

### Prejudice Caused by Cumulative Error for All Claims of Ineffective Assistance of Trial Counsel

[¶25] Woods contends that, viewing all of trial counsel's deficiencies collectively, he has demonstrated that he was sufficiently prejudiced. The burden of proving the prejudice prong of the ineffective assistance of counsel test lies with Woods. *See Dettloff v. State*, 2007 WY 29, ¶ 19, 152 P.3d 376, 382 (Wyo. 2007). While the burden is heavy, this Court has been willing to reverse convictions where defense counsel's strategy is nonsensical. *See Proffit v. State*, 2008 WY 114, ¶ 34, 193 P.3d 228, 241–42 (Wyo. 2008). This is not that case. As recognized by Woods on appeal,

the only evidence in the case was DO's story. There was no DNA evidence, no

other forensic evidence, no telephone calls, no text messages, no emails between DO and the Appellant that might suggest a relationship between them.... Rather, it was all on her. If the jury believed her, it would convict. If there were reasonable doubt as to what happened, if it did not accept her story, it would find otherwise. (Emphasis in original.) The parties agree on this point. It seems plausible, then, even predictable, that an attack on the credibility of D.O. might be the only viable defense available to Woods, which was exactly the approach undertaken by trial counsel. Further, to demonstrate prejudice, Woods must show a reasonable probability that, absent trial counsel's deficiencies, the result of the proceedings would have been different. *See Pendleton v. State*, 2008 WY 36, ¶ 21, 180 P.3d 212, 219 (Wyo. 2008). Even removing from the record the claimed deficiencies, the jury would have been left to hear and consider the testimony of D.O., which it found credible. Woods has failed to carry this burden, even based on his collective assertions of error, that it is reasonably probable that the outcome of his trial would have been more favorable to him. His claims for ineffective assistance of trial counsel fail, both individually and collectively.

### Reversible Error by Trial Court

#### Standard of Review: Plain Error

[¶26] With respect to the other issues raised by Woods, e.g., asserting the trial court erred by not conducting an independent *Daubert* hearing and by failing to provide the jury with a limiting expert witness instruction, a plain error standard of review applies. *See Granzer v. State*, 2008 WY 118, ¶ 9, 193 P.3d 266, 269 (Wyo. 2008). To establish plain error, a defendant must show that the court violated a clear and unequivocal rule of law; that the violation appears in the record; and that the violation resulted in prejudice to the defendant. *See id.*

#### Failure to Conduct Daubert Hearing

[¶27] Woods asserts the district court erred in its failure to, *sua sponte*, conduct a *Daubert* hearing without any request from counsel. The record is clear that neither the State nor defense counsel objected to the testimony of Dr. Lindberg nor requested a *Daubert* hearing regarding the reliability of his testimony.

[¶28] Both the United States Supreme Court and the Wyoming Supreme Court have emphasized that district courts must act as "gatekeepers" to assure that only reliable and helpful expert testimony is communicated to the jury. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592, 113 S.Ct. 2786, 2796, 125 L.Ed.2d 469 (1993), *cert. denied*, 516 U.S. 869, 116 S.Ct. 189, 133 L.Ed.2d 126 (1995); *Bunting v. Jamieson*, 984 P.2d 467 (Wyo. 1999). The United States Supreme Court has opined:

> The primary goal of *Daubert's* gatekeeping requirement "is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Black v. Food Lion, Inc.*, 171 F.3d 308, 311 (5th Cir. 1999); *Kumho*, 119 S.Ct. at 1176.

In *Daubert*, the Supreme Court provided an analysis consisting of a two-part test. First, the district court must determine whether the methodology or technique used by the expert to reach his conclusions is reliable. If so, the court must determine whether the proposed testimony "fits" the facts of the particular case. *Daubert*, 509 U.S. at 592–93, 113 S.Ct. 2786; *Kennedy v. Collagen Corporation*, 161 F.3d 1226, 1227–28 (9th Cir. 1998).

\* \* \*

In the first prong of the *Daubert* analysis, the district court must determine whether the reasoning or methodology underlying the testimony is scientifically valid. *Daubert*, 113 S.Ct. at 2795. *Daubert* provided a non-exclusive list of four criteria to guide the trial court's determination: 1) whether the theory or technique in question can be and has been tested;

2) whether it has been subjected to peer review and publication; 3) its known or potential rate of error along with the existence and maintenance of standards controlling the technique's operation; and 4) the degree of acceptance within the relevant scientific community. *Daubert*, 509 U.S. at 593–94, fn. 12, 113 S.Ct. at 2796–97, fn.12; see also, *Springfield* [ *v. State* ], 860 P.2d [435,] 443 [ (Wyo. 1993) ]. Later courts have endeavored to refine the gatekeeping role of the trial judge by identifying additional factors to assess reliability. These include: the extensive experience and specialized expertise of the expert, *Ambrosini v. Labarraque*, 101 F.3d 129, 140 (D.C. Cir. 1996); whether the expert is proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, *Daubert*, (on remand), 43 F.3d 1311, 1317 (9th Cir. 1995), *cert. denied*, 516 U.S. 869, 116 S.Ct. 189, 133 L.Ed.2d 126; *Ambrosini*, 101 F.3d at 139–40 (D.C. Cir. 1996); and the non-judicial uses to which the method has been put, *In re Paoli R. R. Yard PCB Litigation*, 35 F.3d 717, 742 n.8 (3rd Cir. 1994).

\* \* \*

The second part of the *Daubert* approach requires the trial court to determine whether the testimony "fits" the disputed issues of fact. *Daubert*, 113 S.Ct. at 2796.

> [W]hether the expert testimony will assist the trier of fact in understanding or determining a fact in issue—essentially asks whether the expert's testimony "fits" the facts of the case. This is a relevance standard. Moreover, the 'helpfulness' standard incorporated in [F. R. E.] 702 means that the expert's opinion must relate to an issue that is actually in dispute and must provide "a valid scientific connection to the pertinent inquiry."

*Bunting*, 984 P.2d at 471–72 (footnote omitted). In short, "the focus of the gatekeeping function is to assure that the theories relied upon by experts to support their conclusions are scientifically 'reliable' and that they 'fit' the facts in question." *Hoy v. DRM, Inc.*, 2005 WY 76, ¶ 18, 114 P.3d 1268, 1278 (Wyo. 2005).

[¶29] Here, Dr. Lindberg, a psychologist specializing in child abuse, offered testimony regarding general behaviors of adolescent victim disclosure as it relates to sexual abuse. He did not offer any specific opinion regarding D.O. or the facts of Woods' case. The State offered this testimony; defense counsel did not object or request a *Daubert* hearing. Woods asserts, on appeal, that the district court should have conducted a *Daubert* hearing, *sua sponte*. His chief complaint seems to be that there was no showing that Dr. Lindberg's methodology was reliable, though it was never challenged.

[¶30] Absent a request by one of the parties, the law does not require that the trial court conduct a pretrial *Daubert* hearing. *See Chapman v. State*, 2001 WY 25, ¶ 23, 18 P.3d 1164, 1174 (Wyo. 2001). Indeed, a *Daubert* hearing may be denied, even upon request of counsel, where there is no showing that one is required. *See Seivewright v. State*, 7 P.3d 24, 30 (Wyo. 2000). Although now Woods asserts that Dr. Lindberg's testimony is unreliable, the facts reveal that, at trial, the district court expressly recognized Dr. Lindberg's expertise in a private side bar with counsel. Under these circumstances, the court certainly had the prerogative to decline to hold a *Daubert* hearing, particularly where one is not requested. *See Kumho Tire Co., Ltd.*, 526 U.S. at 152, 119 S.Ct. 1167 ("The trial court must have the same kind of latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable.") (italics in original).

[¶31] Here, there was no challenge to Dr. Lindberg's training or qualifications. True, Dr. Lindberg did not provide the basis of his methodology to the jury, but neither was he asked to. He had been recognized by the district court as an expert and there is no reason to believe that conclusion would have changed after a *Daubert* hearing. Under these circumstances, the district court cannot be said to have failed to conduct a hearing

that neither party requested, nor the law, required. The court did not violate a clear and unequivocal rule of law. There is no reversible error, nor any ineffective assistance of trial counsel in this regard. *See generally Granzer*, ¶ 9, 193 P.3d at 269.

*Failure to Give an Expert Witness Limiting Instruction*

[¶32] Finally, Woods claims it was error for the district court to exclude from its jury instructions the pattern instruction about expert witness testimony. *See* Wyoming Criminal Pattern Jury Instruction 6.08A. At the jury instruction conference during the trial, the district court specifically inquired of counsel whether the pattern instruction on expert testimony should be given. Both the State and Woods expressly declined such an instruction, with counsel for Woods remarking that "since there was no expert testimony, that might be confusing to the jury."[2] Woods asserts that, even in light of counsels' specific request to omit the instruction, the district court should have given it.

[¶33] When considering whether the omission of a jury instruction was necessarily prejudicial, this Court employs the general standards for reviewing jury instructions. Trial courts are given "wide latitude in instructing the jury and, as long as the instructions correctly state the law and the entire charge covers the relevant issue, reversible error will not be found." *Dennis v. State*, 2013 WY 67, ¶ 36, 302 P.3d 890, 897 (Wyo. 2013); *see Marfil v. State*, 2016 WY 12, ¶ 17, 366 P.3d 969, 973 (Wyo. 2016). The test for instruction is "whether the instructions leave no doubt as to the circumstances under which the crime can be found to have been committed." *Dennis*, ¶ 36, 302 P.3d at 897.

[¶34] Trial counsel for Woods and the State agreed that an expert witness instruction was unnecessary. The jury had not been informed that Dr. Lindberg was an "expert" and defense counsel, in particular, had strategic concerns that including an expert witness instruction would amount to informing the jury that Dr. Lindberg should be considered an expert, thereby raising a possibility that the jury would place greater emphasis on his testimony.

[¶35] Also, the district court expressly instructed the jury that:

> On the other hand, it is the exclusive province of the Jury to weigh and consider all evidence which is presented to it; to determine the credibility of all witnesses who testify before you, and from such evidence and testimony, to determine the issues of fact in this case.
>
> . . .
>
> The Jury is the sole judge of the credibility of the witnesses, and of the weight to be given their testimony. You should take into consideration their demeanor upon the witness stand, their apparent intelligence, their means of knowledge of the facts testified to. . . . In so doing, you may take into consideration all of the facts and circumstances in the case and give such weight as you think the same are entitled to, in the light of your experience and knowledge of human affairs.

[¶36] While this Court has commented that it is preferable that the jury be provided an expert witness jury instruction, the failure to do so did not amount to plain error under these circumstances. *See Worcester v. State*, 2001 WY 82, ¶ 20, 30 P.3d 47, 54 (Wyo. 2001); *Runnion v. Kitts*, 531 P.2d 1307, 1310 (Wyo. 1975). Here, the jury was adequately advised as to its province in weighing the evidence and considering the credibility of witnesses and weight to be given their testimony, including that of Dr. Lindberg. The instructions given by the court were sufficient to guard against any prejudice that Woods may have suffered from the lack of an instruction concerning expert witness testimony. *See Worcester*, ¶ 21, 30 P.3d at 54. There lies no reversible error in the district court's decision.

---

**2.** When the district court recognized Dr. Lindberg as an expert, it was done at a private sidebar, out of the presence of the jury.

### CONCLUSION

[¶37] Finding no grounds upon which to conclude trial counsel was ineffective in her representation of Woods, nor any reversible error on the part of the district court, this court affirms Woods' convictions in all respects.